UNITED STATES FIDELITY & GUARANTY CO. v. HAGGART.

(Circuit Court of Appeals, Eighth Circuit.   August 5, 1908.)

No. 2,813.

1. JUDGMENT — PARTIES CONCLUDED—CONCLUSIVENESS AS BETWEEN CODEFEND-
    ANTS.
    A judgment recovered by the United States against a marshal and the
    surety on his bond, conditioned for the faithful performance of the duties
    of his office by the marshal and his deputies, which was based on defalca-
    tions of two of his deputies, is conclusive of such defalcations and the
    amount thereof in a subsequent action between the marshal and his surety.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1229.]

2. PRINCIPAL AND SURETY — RECOVERY AGAINST SURETY — ACTION TO RECOVER
    OVER.
    Plaintiff, a bonding company, became surety on the bond of defendants'
    intestate as United States marshal, and also surety on the bonds of his
    deputies, running to him and conditioned to save him harmless from lia-
    bility on account of their acts.   The United States recovered a judgment
    against the marshal and plaintiff as his surety on account of defalcations
    of two of his deputies which judgment plaintiff paid.   *Held*, that its lia-
    bility for such defalcations as between it and the marshal was primary,
    and it could not recover over against his estate.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Sure-
    ty, §§ 497, 499, 524.]

3. SAME—LIABILITY OF SURETY ON BOND—FAILURE OF PRINCIPAL TO SIGN.
    In all cases where the principal in a bond would be liable without ref-
    erence to the bond for acts which constitute a breach, and by the terms of
    the bond the parties bind themselves severally as well as jointly to per-
    form its conditions, the failure of the principal to sign the bond does not
    render it void as to the surety, or release him from liability thereon.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and
    Surety, § 39.]

In Error to the Circuit Court of the United States for the District
of North Dakota.

W. S. Stambaugh and Engerud, Holt & Frame, for plaintiff in error.
S. G. Roberts, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and
W. H. Munger, District Judge.

W. H. MUNGER, District Judge.   The record in this case discloses
the following facts:   In January, 1898, one John E. Haggart was ap-
pointed United States marshal for the state of North Dakota, and on
the 18th day of said month he executed to the United States of Amer-
ica a bond in the penal sum of $20,000 for the faithful performance by
said Haggart and his deputies of all the duties of said office, which
said bond was executed by the United States Fidelity & Guaranty Com-
pany, as surety.   Two of the deputies appointed by said Haggart were
William J. Hurst and Fred W. Schindler.   On January 29, 1898, said
Hurst, as such deputy, executed to the said Haggart a bond in the
penal sum of $5,000, with said United States Fidelity & Guaranty
Company as surety, by the terms of which bond said Hurst and said
guaranty company jointly and severally bound themselves to save said
Haggart harmless from every act done or neglected to be done by said

163 F.—51

Hurst while acting as such deputy. On said 29th day of January, 1898, said Fred W. Schindler gave a like bond to said Haggart, with said United States Fidelity & Guaranty Company as surety, except that said bond was not signed by said Schindler. November 12, 1898, said Haggart wrote a letter to plaintiff, which was received by plaintiff, informing it that said Schindler had been indicted by the United States grand jury for rendering false accounts and creating false and fraudulent vouchers therefor, and calling the attention of the bond company to the fact that they were sureties upon said Schindler's bond. On February 10, 1903, said Haggart wrote a letter to said United States Fidelity & Guaranty Company to the effect that he had received formal notice from the Comptroller of the Treasury at Washington that the Attorney General had demanded a revision of the accounts of said marshal with respect to the accounts of said two deputies, with a view of charging back to said Haggart false items included in those accounts; that said Haggart was requested to submit under oath any reasons which he might have why the said accounts should not be recharged with the amounts disallowed on such revision, informing it that the amounts which the examiner had disallowed of the accounts against Hurst were $843.18 and against Schindler $2,973.95. To this letter the United States Fidelity & Guaranty Company wrote Haggart that his letter had been referred to their representative at Minneapolis. March 24, 1903, Haggart again wrote a letter to plaintiff, which was received, to the effect that the Comptroller of the Treasury had instructed him to make a revision of his accounts relative to the accounts of Deputy Marshals Schindler and Hurst, with a view to charging back to Mr. Haggart the false items included therein; that the revised account, together with the original accounts of the deputies, were in his office, subject to the inspection of its representative. To this letter the guaranty company answered under date of March 31st, stating that the matter had been referred to their Minneapolis office for attention. July 7, 1903, Haggart wrote said guaranty company that he had received the final revision from the comptroller, and that the shortage in Schindler's account after revision was $1,982.30. July 14th the guaranty company answered this letter, advising him that his letter had been referred to their special representative and the matter was receiving his attention. November 14, 1902, Haggart wrote said guaranty company to the effect that on January 29, 1898, their company became surety to him upon the bond of said Deputy Hurst, and advising them that Hurst had been indicted by the United States grand jury for rendering false accounts and creating false and fraudulent vouchers in connection therewith. Under date of March 31, 1903, the said guaranty company acknowledged the receipt of the letter, and informed Mr. Haggart that it had been referred to their Minneapolis office for attention. On July 7, 1903, Haggart again wrote to said guaranty company, informing it that he had received the account of the revision by the comptroller of Deputy Hurst's account, and upon such revision it was shown that the shortage was $261.12. January 24, 1904, Haggart wrote the guaranty company that he had furnished their representative, Mr. A. B. Walker, of Fargo, with a complete statement of the amount due under the

bonds of said deputies. Under date of January 23, 1904, Alfred B. Walker, representative at Fargo of said Guaranty Company, wrote the company, in substance, that he and one Mr. Shattuck, agent of the American Bonding Company, had spent the day looking into the matter of the respective deficits of said deputies, and found that the defalcation of Deputy Hurst, for which the guaranty company was liable, was $500.76, and that the amount for which the company was liable on Schindler's bond was the sum of $1,919.45. In said letter he further informed the company that said Haggart had been of great assistance to them in figuring out the various items and requested the company to promptly settle the same.

These matters not having been adjusted, the United States on March 24, 1904, commenced an action against said Haggart and said guaranty company, in the United States Circuit Court for the District of North Dakota, to recover upon said bond of Haggart to the United States the sum of $2,697.45 and interest. The guaranty company defended said action, and applied to and obtained from the court an order that the United States, as plaintiff, furnish a bill of particulars by June 10, 1904. The bill of particulars was furnished, showing that the sum sued for was on account of alleged false accounts of said two deputies. The guaranty company filed an answer, admitting the giving of the bond, its corporate capacity, and denying all other allegations of the complaint. The action was tried and a judgment rendered in favor of the United States and against the defendants on the 21st day of June, 1905, for the amount and interest. In September, 1905, said Haggart died, and Betsey J. Haggart was duly appointed the administratrix of his estate. In December, 1905, the defendant guaranty company paid said judgment, and afterwards presented its claim for repayment to the administratrix. The same not being allowed, the guaranty company on June 5, 1906, commenced this action in the Circuit Court of the United States to recover the same. The defense interposed by defendant as administratrix in her answer was, in substance, that the judgment mentioned was based wholly on defalcations of said two deputies, for which plaintiff guaranty company was surety to defendant's intestate. During the trial the defendant introduced in evidence said bonds given by each of said deputies, the record and judgment in the former case, and evidence that the amount of the defalcations of the deputies, and no part thereof, had been paid. Upon the conclusion of all the evidence the court directed a verdict for defendant, and plaintiff brings the action to this court for review.

During the trial counsel for plaintiff made appropriate objections to the introduction of evidence, and excepted to the various rulings of the court with respect thereto, also to the direction by the court of a verdict for the defendant. While there are 30 assignments of error, counsel for plaintiff in their brief properly say:

"The case presents but two main questions:

"(1) Does the answer set forth a good plea of estoppel by judgment?

"(2) If the defense of res adjudicata is well pleaded, does the evidence sustain the plea?

"Plaintiff does not controvert any of the evidence introduced by defendant, so the questions presented are purely questions of law."

It is insisted upon the part of plaintiff that the record in the case of the United States v. Haggart and the guaranty company was improperly admitted in evidence, as that judgment was in no respect res adjudicata of any of the questions involved in this action. This contention is based chiefly upon the proposition that a judgment is not res adjudicata excepting as between adversary parties; that in that case Haggart and the guaranty company were not adversary parties, but merely codefendants. In support of this proposition numerous authorities have been cited, among them 1 Van Fleet on Former Adjudication, § 256, from which they quote the following:

"Unless the defendants contest an issue with each other either upon the pleadings between them and the plaintiffs, or upon cross-pleadings between themselves, it will not be res adjudicata in a litigation between them. Of course, a judgment determining the rights of the defendants between themselves, under proper pleadings, is conclusive upon them, but a judgment against them if there are no issues between them does not bind them as against each other."

While this is undoubtedly the general rule, it is not without its exceptions. True it is that judgment did not settle the question as to whether or not the guaranty company was liable to Haggart. However, that judgment, we think, did settle some of the questions as between Haggart and the guaranty company, among them that the basis and foundation of the judgment was the defalcation of said two deputies, and the amount thereof. Could it be successfully contended by Haggart's administratrix in the present case that, notwithstanding the judgment in the prior action, he was not marshal of the district of North Dakota, or that he did not execute the bond sued upon in that action, or that he did not make default in any of the conditions of that bond, or that he had fully accounted to the government before that action was brought for all money which had come into his hands; or that the matter actually litigated in that action was one for which he was not responsible to the government? Or, state the matter in another way, A. sues B. and C. upon a joint promissory note, alleged to have been executed by B. and C. Upon a trial judgment is given against both B. and C. B. is made to pay the judgment and sues C. for contribution. Can C. successfully defend upon the ground that he never signed the note, or that he had wholly paid it before A. sued upon it? It is obvious that these questions must be answered in the negative.

The case of Lloyd v. Barr, 11 Pa. 41, was an action brought by Barr, the last indorser of a promissory note, against Lloyd, a prior indorser. The declaration set forth the making of the note, its indorsement by Lloyd, its still later indorsement by Barr, its presentment and dishonor at maturity, due notice to each of its indorsers of its dishonor, a subsequent action thereon by the holder against the maker and the several indorsers, including Lloyd and Barr, the rendition of a judgment in that action in favor of the holder against the maker and the several indorsers, and the payment of that judgment by Barr to the last indorser. Barr's action was founded upon the right of a subsequent indorser, when compelled to pay a note, to enforce reimbursement from a prior indorser. Lloyd pleaded that he had not been notified

of the dishonor of the note, and therefore that his liability as an indorser had not been perfected or preserved. To this plea Barr replied, setting forth the record in the prior action, to which both Lloyd and Barr were parties defendant, wherein the declaration had alleged that the note was due, was presented for payment at its maturity, that it was then dishonored, and that notice thereof was duly given to each of the indorsers. Lloyd demurred to the replication, and the court gave judgment for the plaintiff Barr upon the demurrer. In the Supreme Court it was insisted by Lloyd that he and Barr were codefendants in the prior action, where they were repelling the act of a common foe, and were not litigating their relations as between themselves, and were not adversary parties; that the judgment, therefore, in that action was not conclusive upon the question as to whether or not Lloyd had been duly notified of the dishonor of the note. The Supreme Court held that the prior judgment conclusively established that due notice of the dishonor of the note had been given to Lloyd, and in the course of the opinion it was said:

"The now defendant had then a full opportunity to controvert his liability on the note in question, and to cross-examine the witnesses produced by the bank to prove it, a privilege which constitutes one of the principal tests of estoppel by judgment. The very point, too, to establish which that judgment is now pleaded, was then in issue. * * *

"It is further objected that the record pleaded lacks the essential quality of mutuality as between the now plaintiff and defendant. If so, it is clearly inconclusive, for none can take advantage of the record of a judgment who might not be prejudiced by it, and this includes only parties and privies. The question of mutuality almost always arises between those who have occupied an antagonist position in the litigation of which the judgment is the fruit. But the principle from which estoppel springs is also applicable between joint defendants, where, from the nature and course of the suit, everything necessary to give to one defendant a cause of action against his fellow must have been proved by the original plaintiff in support of his claim to recover. * * * A difference in the forms of the actions matters nothing. The inquiries are: What was decided, and was the party against whom it is proposed to use the first record, also a party to the proceeding? If so, it can make no difference whether he was plaintiff or one of several defendants. This truth may be illustrated by the statement of one or two simple instances. If a recovery be had against two or more partners in trade, and the judgment paid by one of them, it would certainly be conclusive evidence against the other partners, who ought to have paid it; not only of the fact of the judgment, but also of the liability of the defendants, of the amount recovered, and the grounds of it. So, too, a joint judgment recovered upon a bond against principal and surety could not be impeached or overhauled in a subsequent action, brought by the surety against his principal, to recover money paid in discharge of it, upon any ground that might have been made a defense in the first suit. * * *

"Between codefendants, as well as in the case of antagonist parties, the public tranquility requires that, having been once fairly tried, further agitation of the same subject be forbidden. And the law does forbid it."

The record shows that in the suit brought by the government against Haggart and the guaranty company a transcript of books and proceedings in the Treasury Department was given in evidence, and in the stipulation as to the summary of said transcript is the following:

"The greater portion of these disallowances on the revision were on account of the alleged defalcations of the Deputy Marshals Schindler and Hurst. The remainder were on account of alleged defalcations of other deputies. The disallowances on account of the acts of deputies other than Schindler and Hurst were repaid to the government, thus leaving the marshal's accounts showing

a balance in favor of the government and against the marshal aggregating the sum of $2,697.45."

It is stipulated in this case that upon the trial of the former case an Assistant Auditor of the United States was called as a witness by the government, who testified relative to said transcript from the books and accounts of the Treasury Department, and the stipulation says:

"That the witness heretofore described as assistant auditor in the former stipulation on this trial was cross-examined by counsel for the United States Fidelity & Guaranty Company as to the character and extent of the items charged as false and fraudulent in the accounts of Fred W. Schindler and William J. Hurst, as deputy marshals."

Thus it is shown by the record, not only that the matter of inquiry in the former case was the defalcations of said deputies, but that the guaranty company, plaintiff in this action, not only was afforded an opportunity to cross-examine the witnesses relative thereto, but did actually make such cross-examination, and the case falls, we think, directly within the rule thus announced in the foregoing cited case. Lawrence v. City of Milwaukee, 45 Wis. 306, was a suit brought by a contractor against the city upon a contract between them. It was held that a judgment in a prior action brought by a taxpayer against the contractor and the city, wherein the contract was adjudged void, was conclusive of the invalidity of the contract, and that that matter was not open to relitigation between the defendants to the prior action. Millikan v. Lafayette, 118 Ind. 323, 20 N. E. 847, was an action by a purchaser at a tax sale to recover from the city the amount paid by him for the property sold. It was held that a judgment in a prior action brought by the former owner of the property against the city and the tax sale purchaser, wherein it was adjudged that the tax sale was ineffectual and gave no title to the purchaser, was conclusive of the invalidity of the sale, and that the matter was not open to relitigation between the defendants in the prior action. Osage City Bank v. Jones, 51 Kan. 379, 32 Pac. 1096, was an action by a guarantor against the maker of a certificate of deposit for reimbursement because of having paid a judgment rendered against them upon the certificate of deposit, in an action brought by a holder thereof. It was held that the judgment in the prior action to which the maker and the guarantor were parties defendant was conclusive of the validity of the certificate of deposit, and that it was not open to the maker, a bank, to defend against the guarantor's action upon the ground that the certificate had been unlawfully issued.

The former action brought by the government being based wholly upon the defalcations of said two deputies, and the bond of each of those deputies, with said guaranty company as surety thereon to said Haggart covering such defalcations as between Haggart and the guaranty company, the guaranty company was primarily liable therefor. As before shown, it clearly appears that Haggart, as soon as he first learned that said deputies had in their accounts made false and fictitious claims, and that the United States had signified its intention to revise said accounts, promptly notified the guaranty company thereof, calling its attention to the fact that it was surety for said deputies, and that he successively notified the guaranty company of each step

taken in the progress of revising said accounts. They were thus given an opportunity to defend. Under such state of facts, even though the guaranty company had not been a party in the government suit and defended therein, such judgment would have been evidence in the present action that the judgment was based upon the defalcations of the deputies and amount thereof, for which the guaranty company would be liable as shown by the following authorities:

In Hand v. Taylor, 4 Ind. 409, it was held in an action by the United States marshal against his deputy and sureties that a judgment obtained against the marshal for damages by reason of the deputy having taken insufficient bail on an execution, the deputy and his sureties having been notified of the action against the marshal, that such judgment against the marshal was conclusive against the deputy and his sureties as to the damages.

In Fay v. Ames, 44 Barb. (N. Y.) 327, it was held:

"In an action by a sheriff upon the bond given by a deputy sheriff on receiving his appointment to indemnify the sheriff against his acts or omissions as such deputy, the surety on such bond is concluded by a judgment recovered against the sheriff in an action brought against him for the neglect of the deputy to collect an execution, of which action the deputy had notice, and which he defended, although no notice of such suit was given to the surety.

"And the surety is not at liberty in such action upon the bond to litigate over again the liability of the sheriff in the former action, nor to prove facts in exoneration of its principal which the latter set up as a defense in the former suit.

"Where parties join in a bond of indemnity as principal and sureties, they are in privity of contract with each other, and are to be regarded and treated quoad the contract and the rights and liabilities connected with and growing out of it as one person. In such a case, notice to one is notice to all."

In Crawford v. Turk, 24 Grat. (Va.) 176, it was held that in an action by an execution creditor against a sheriff for the failure of his deputy to pay over money made on the execution, the deputy being present at the trial and examined as a witness, and judgment rendered against the sheriff in such action, that in a subsequent action by the sheriff against the deputy and his sureties on his bond, conditioned to indemnify the sheriff from all loss and damages from the conduct of the deputy in said office, the judgment against the sheriff, in the absence of fraud, was conclusive evidence of the fault of the deputy, against not only the deputy, but also his sureties. It was farther held that though the declaration in the action by the sheriff did not allege that the deputy was requested to defend the suit against the sheriff, or had an opportunity to do so, or had notice thereof, the deputy's presence at the trial, and being active in the defense, might be proved by oral testimony.

In Chamberlin v. Godfrey, 36 Vt. 380, 84 Am. Dec. 690, the first paragraph of the syllabus is as follows:

"The defendants were jointly and severally bound in a penal bond, conditioned to indemnify and save harmless the plaintiff as sheriff of the county of Orange from all actions, suits, troubles, costs, charges, damages, and expenses on account of any malfeasance, misfeasance, or nonfeasance of the defendant Godfrey as deputy sheriff. Judgment was recovered in a suit against the sheriff for the neglect of his duty in not paying over moneys collected on an execution. Held, that this judgment was conclusive as to the fact of the

deputy's neglect, not only against the deputy, who defended the suit, but also against the sureties, who had notice."

In Beauchine v. McKinnon, 55 Minn. 318, 56 N. W. 1065, 43 Am. St. Rep. 506, which was an action brought against the sureties upon a sheriff's bond, it was held that a judgment against the sheriff alone was prima facie 'evidence of the liability of the sureties. The court in its opinion cite numerous authorities upon the three propositions: (1) That such judgment is not evidence; (2) that it is prima facie evidence; (3) that it is conclusive evidence.

Washington Gas Co. v. District 'of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712, was a case in which one Marietta M. Parker recovered a judgment against the District of Columbia for a personal injury alleged to have been sustained by reason of a defect in the sidewalk in the city of Washington; the defect having been caused by the Washington Gas Company. The District of Columbia notified the gas company of the suit, and the gas company was afforded an opportunity to defend, which they did not do. Judgment was obtained against the District of Columbia, which was paid, and the District of Columbia brought suit against the Washington Gas Company.

The court say:

"As a deduction from the recognized right to recover over it is settled that where one having such right is sued, the judgment rendered against him is conclusive upon the person liable over, provided notice be given to the latter, and full opportunity be afforded him to defend the action."

It was held that the judgment was conclusive as to the liability of the company to the district. It was further held that in such action for the purpose of ascertaining the subject-matter of the controversy between the person who was injured and the district, and fixing the scope of the thing adjudged, the entire record, including the testimony offered, might be examined.

See, also, Lake Drummond Canal & Water Co. v. West End Trust & Safe Deposit Co., 142 Fed. 41, 73 C. C. A. 227.

In Moses v. United States, 166 U. S. 571, 17 S. Ct. 682, 41 L. Ed. 1119, the United States obtained a judgment against one Howgate, to which action his sureties were not parties. The United States subsequently sued the sureties, and it was held that the judgment against Howgate, the principal, was at least prima facie evidence as to a breach of the bond by the principal, and the amount of damages, in the action against the sureties.

From the foregoing authorities we think it clear that the record of the judgment in the government suit against Haggart and the guaranty company was competent evidence to establish the fact that that judgment was based upon the default of the two deputies, and the amount thereof. It is true that action was upon the bond given by Haggart to the United States, upon which the guaranty company was surety. That bond, however, was conditioned, not only that Haggart would faithfully perform his duties as marshal, but was also conditioned for the faithful performance of the duties of his deputies. Though the petition filed in the government case did not specify whether the breach of the bond was because of a personal delinquency upon

the part of Haggart, or misconduct of his deputies, the fact in that respect was disclosed by the bill of particulars which was furnished at the request of the guaranty company. While a bill of particulars is not a pleading in the sense that a demurrer may be interposed thereto, and it cannot enlarge the claim of the plaintiff, yet a bill of particulars does limit the issues to the particular matters therein stated. In the case at bar the action is brought by the guaranty company to recover from Haggart's estate the amount of that judgment which it paid. The guaranty company being a party to that action, and knowing that it was based upon the defalcation of the deputies for each of whom it was surety, it stands in the same attitude at least as one who is liable over to another and has notice of the bringing of a suit against such other, and given an opportunity to defend. Supposing the case was reversed, that Haggart had paid the judgment and then brought suit against this guaranty company as surety upon the bond of his deputies? Under the facts stated and the foregoing authorities, the judgment against Haggart would be at least prima facie evidence of a breach of the condition of the bond and the amount of damages. How can it be different where the guaranty company has paid the judgment, which, as between it and Haggart, it was primarily liable for, and seeks to recover from his estate? Of course, the guaranty company was not precluded from making other defenses. It would have been open to the guaranty company to have shown that it was not surety upon the deputies' bonds, had such been the fact. It was open for them to show that the deputies had paid that judgment obtained by the government. These facts were not shown; indeed, the contrary was admitted. The guaranty company did deny liability upon the bond given by Schindler, for the reason that such bond was not signed by Schindler. Schindler's name, however, was written in the body of the bond, as principal, and it appears that the company received a premium for executing as surety the Schindler bond and for annually renewing it thereafter. We think the proper rule of law to be in all cases where the principal in a bond would be liable without reference to the bond for the acts constituting the breach, and by the terms of such bond the parties bind themselves severally as well as jointly to perform its conditions, the failure of the principal to sign the bond does not render the bond void as to the surety, and release the surety from liability thereon. St. Louis Brewing Ass'n v. Hayes et al., 38 C. C. A. 449, 97 Fed. 859; State v. Bowman, 10 Ohio, 445; City of Deering v. Moore, 86 Me. 181, 29 Atl. 988, 41 Am. St. Rep. 534; Lovejoy v. Isbell, 70 Conn. 557, 40 Atl. 531; Pina County v. Snyder et al., 5 Ariz. 45, 44 Pac. 297; Douglas County v. Bardon et al., 79 Wis. 641, 48 N. W. 969.

It is urged with some persistence that in the trial of the government case incompetent evidence was admitted, and that the evidence was insufficient to support the judgment. That question is not open for consideration now. If error was committed during the progress of the trial of that case, or if the evidence was insufficient to support the judgment, the remedy of the parties was to have brought that case here for review. That was not done. The judgment was accepted as final and paid, and the parties are now concluded by it.

Again, it is insisted that the evidence in this case is insufficient to support the judgment. The evidence discloses that plaintiff in error. as surety for said deputies, engaged with Haggart that they would faithfully perform the duties of their office, and save Haggart harmless from a failure so to do. The issues tried and disposed of in the government case established the fact that said deputies did not faithfully perform those duties. The evidence shows that the deputies have not paid any portion of the amount of their defalcation as established in the government case. From the evidence and the law it clearly appears that, as between plaintiff in error and Haggart, plaintiff in error was primarily liable for the payment of the judgment obtained by the government. Not only has justice been done in this case, but trial had and judgment obtained in conformity with the technical rules of law.

For these reasons, the judgment is affirmed.