## AMERICAN SURETY COMPANY OF NEW YORK *v.* PANGBURN.

[No. 22,413.    Filed June 26, 1914.]

1. PRINCIPAL AND SURETY.—*Action on Surety Bond.—Complaint.— Averment of Execution.—Delivery.*—The allegation in a complaint of the execution of the surety bond sued on implies a delivery thereof.    p. 119.

2. PRINCIPAL AND SURETY.—*Action on Surety Bond.—Liability of Surety. — Incomplete Instrument. — Waiver of Conditions. — A* surety for hire assenting to the delivery of a bond executed by it, which shows on its face a failure to execute by the principal, may be bound thereby, even though it contains a provision that it shall not be construed as entered into or delivered by the surety until executed in due form by the principal, since the act of delivery in such case implies a waiver of such provision.    (*Markland Mfg. Co.* v. *Kimmell* [1882], 87 Ind. 560, *Allen* v. *Marney* [1879], 65 Ind. 398, and *Deering Harvester Co.* v. *Peugh* [1897], 17 Ind. App. 400, distinguished.)    pp. 119, 120, 123.

3. PRINCIPAL AND SURETY.—*Liability of Surety.—Strict Construction.*—While an ordinary accommodation surety is entitled to stand on the strict letter of his contract, such rule does not hold in the case of a surety for hire, and the contracts of the latter are controlled by the law applicable to the construction of insurance contracts.    p. 120.

4. INSURANCE.—*Contracts.—Construction.*—Insurance contracts, if doubtful or equivocal, are construed against the insurer.    p. 120.

5. PRINCIPAL AND SURETY.—*Action on Surety Bond.—Non Est Factum.—Burden of Proof.*—A plea of *non est factum* by defendant sought to be charged as surety on a bond that had not been signed by the principal, and containing a stipulation that it was not to be construed as entered into or delivered by the surety until executed in due form by the principal, casts upon the plaintiff the burden of proving that the bond was signed and delivered by defendant in its incomplete condition with the purpose of being bound thereby.    p. 120.

6. PRINCIPAL AND SURETY.—*Action on Surety Bond.—Evidence.— Delivery of Incomplete Instrument.*—In an action against a surety company on a bond signed by it, but not by the principal, to indemnify a county treasurer against loss from any act of his deputy, evidence showing that a prior bond signed by defendant on behalf of the same deputy had been delivered by defendant's agent to such treasurer without having been executed by the principal, and that the bond sued on had been signed by

defendant and forwarded to its agent, who in turn handed it to a third person to be delivered to such treasurer, and that he did so deliver it, and that the premium on both bonds had been paid to defendant, was sufficient to warrant a finding that the bond in suit had been delivered to plaintiff by defendant with the intention of being bound thereby, notwithstanding a provision therein that it should not be deemed as entered into or delivered by the surety until executed in due form by the principal.  p. 121.

7.  PRINCIPAL AND SURETY.—*Action on Bond.—Incomplete Instrument.—Rights of Surety.*—Where a bond signed by a surety company indemnifying a county treasurer against loss from the acts of his deputy, was not signed by the principal, such omission was a mere technicality not affecting the· rights of the parties in an action against the surety, since defendant surety could have made the principal a party to the action and obtained an adjudication of its rights against him to the same extent as if he had executed the bond.  p. 124.

8.  PRINCIPAL AND SURETY.—*Delivery of Incomplete Instrument.—Liability of Surety.*—That a surety bond signed by the surety alone, and not by the principal, is joint in form will not prevent a recovery thereon, if it was delivered to the obligee by the surety with the intent to be bound thereby.  p. 124.

9.  PRINCIPAL AND SURETY.—*Action on Surety Bond.—Instructions.*—In an action against a surety company on a bond signed by it, but not by the principal, where the evidence showed that a former bond executed by defendant for the same principal had been delivered to plaintiff as obligee without having been executed by the principal, and that the bond in suit, after signatures by defendant, had been forwarded by it to its agent, who in turn delivered it to a third person with directions to deliver it to plaintiff, which he did, it was not error to instruct the jury that evidence of the delivery of the former bond could be considered in determining the question of intent as to delivery of the bond sued on.  p. 125.

From Clark Circuit Court; *Jere West,* Special Judge.

Action by Marion E. Pangburn against the American Surety Company of New York. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Roscoe O. Hawkins, Gaylord R. Hawkins, Joseph H. Warder, Charles L. Jewett* and *Henry E. Jewett,* for appellant.

*Edwin C. Hughes, Harry W. Phipps, Frank S. Roby, Ward H. Watson, Sol H. Esarey* and *Elias D. Salsbury,* for appellee.

MORRIS, J.—Appellee sued appellant, and Lewis L. Chapman, on a surety bond. The complaint alleges that at the general election of 1898, appellee was elected treasurer of Clark County, for a term of two years, commencing in January, 1899; that he appointed Chapman as his "General Statutory Deputy"; that the bond in suit was executed by Chapman as principal, and appellant as surety, to indemnify appellee against loss by embezzlement or theft, by Chapman, of county funds; that in the year 1899, Chapman embezzled $9,822 that came into his possession by virtue of his official position. The action was commenced in September, 1900, but the cause was pending in lower courts for more than twelve years before the rendition of the judgment from which this appeal is prosecuted.

The bond, filed as an exhibit to the complaint, recites that

"We, Lewis L. Chapman as principal, * * * and the American Surety Company of New York, * * * as surety (in consideration * * * of an agreed premium * * * ) bind ourselves, subject to the conditions hereinafter contained, to indemnify Marion E. Pangburn, treasurer of Clark County, Indiana, hereinafter called the 'employer' * * * against such direct pecuniary loss not exceeding $10,000, as the employer shall have sustained of the employer's money, funds, * * * stolen or embezzled by said employee * * * in the course of the performance of the duties of his employment as deputy treasurer of said employer."

This is followed by numerous conditions, in number 13 of which appears the following:

"That this instrument shall not be construed as entered into or delivered by the surety until executed in due form by the employee as principal; that the liability of the surety hereunder is, and shall be construed as, one of suretyship only * * * . And said employee * * * binds himself * * * to save said surety harmless from, and on demand to pay it any and all claims, demands, loss * * * judgments and adjudications whatsoever which said surety shall at any time sustain."

The instrument exhibited, shows the name of Chapman in the body of the bond, but not as signed at the conclusion thereof, though there appears a blank for such signature, and the attestation thereof. It appears as signed by appellant alone.

Chapman's demurrer to the complaint, for insufficient facts was sustained, and thereafter he ceased to be a party to the action. Appellant's demurrer was overruled, and such ruling is assailed here as erroneous. The complaint alleges that the bond was "executed" by appellant. The averment of the execution of an instrument implies a delivery thereof. Whatever may be the rule in other jurisdictions, this court is committed to the doctrine that a surety assenting to delivery may be bound by an incomplete instrument which shows on its face a failure to execute by the principal. In *Wild Cat Branch* v. *Ball* (1873), 45 Ind. 213, the action, as here, was on a bond, joint in form, with the name of the principal appearing in the body thereof, but not to the signature thereto, and with a signature of the sureties only. In its opinion the court on page 218 said: "The sureties might have agreed to become liable, and assented to the delivery of the bond without the name of the principal being signed thereto, and for this reason, and as it is alleged in the complaint that they did execute the bond, which includes its delivery, we hold that the complaint as to them is sufficient. If the circumstance were such as that they are not liable on the bond, we think they must disclose their defense by way of answer." This doctrine is approved in *Husak* v. *Clifford* (1913), 179 Ind. 173, 100 N. E. 466. It is true that in the case of *Wild Cat Branch* v. *Ball, supra,* there was no express condition, as here, that the bond should not be deemed as executed unless signed by the principal, but we perceive no good reason why, under the facts here appearing on the face of the complaint, the surety may not have waived such express condition. An ordinary accommodation surety is en-

titled to stand on the strict letter of his contract, but appellant is a surety for hire. The overwhelming weight of recent American authority, does not accord such surety the right to invoke the rule of *strictissimi juris,* but places such contract in the insurance class and measures the right of such surety by the law applicable to insurance contracts. *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372 and authorities cited; monographic note to *Hormel & Co.* v. *American Bonding Co.* (1910), 33 L. R. A. (N. S.) 513. Treating the contract as one of insurance, the averment of the complaint that the bond was executed by appellant necessarily implies the waiver of the condition precedent set out in the body of the obligation. *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379, 72 N. E. 132, and authorities cited. In the course of that opinion it was said on page 387: "It is obvious that, no matter how resolutely a party declares beforehand that he will not be bound except by a contract of a specified character, yet, if he afterwards makes a contract in disregard of his declaration, his prior provision will avail him nothing." Insurance contracts, if doubtful or equivocal, are construed against the insurer. *Federal Life Ins. Co.* v. *Kerr* (1910), 173 Ind. 613, 618, 83 N. E. 398, 91 N. E. 230, and authorities cited. There was no error in overruling appellant's demurrer to the complaint.

Appellant answered the complaint in several paragraphs, among which was a verified plea of *non est factum.* This cast on appellee the burden of proving that the bond in suit was signed and delivered by appellant, in its incomplete condition, with the purpose, on appellant's part, of being bound thereby. There was a trial by jury, resulting in a verdict and judgment for appellee. Appellant's motion for a new trial assigning, among other things, the insufficiency of the evidence, in law and fact, to

support the verdict, was overruled and this action is assailed as erroneous.

There was little conflict in the direct evidence relating to the delivery of the bond. Appellee was first elected as treasurer of Clark County in November, 1896, for the term of two years commencing the first Monday in January, 1897. When his term commenced, appellee appointed Chapman as his general statutory deputy, on condition that he furnish a bond. Chapman applied to appellant at its home office in New York, for a bond for the term of one year, and appellant signed a bond in all respects like the one in suit, except as to dates, and forwarded the same to its branch office at Indianapolis, in charge of one Clark a resident assistant secretary who was authorized to deliver to obligees, bonds that had been signed at the home office. Later, on March 14, 1897, the bond was mailed to appellee, at Jeffersonville, Indiana, from appellant's branch office at Indianapolis by appellant's resident assistant secretary with a letter, reading in part, as follows:

"Mr. Marion E. Pangburn, Treasurer, Jeffersonville, Ind.

Dear sir: We beg to enclose herewith suretyship bond No. 202,438, covering your deputy, Mr. Lewis L. Chapman, in the sum of $10,000, for the period of January 2, 1897, to January 2, 1898. Delay in the execution of your bond has been due to'', etc.

That bond was never signed by Chapman. Appellant received $50 as a premium. The bond was renewed for the year 1898, in consideration of a premium of $50. On January 2, 1899, appellee reappointed Chapman as his statutory deputy, with the understanding that he should give bond as he had done before. Chapman made application to appellant for a new bond, on a printed form, and sent it to appellant's home office, at the city of New York. Thereupon appellant forwarded to appellee a printed form of statement for him to fill out and sign. The same was filled out and

signed by appellee and returned to the home office of appellant on January 26, 1899. Some days later at the home office in New York, the bond in suit was signed for appellant by its vice president and assistant secretary and forwarded to appellant's branch office at Indianapolis. The latter office was then in charge of Albert W. Wishard, agent and assistant resident secretary, who was authorized by appellant to deliver to obligees, bonds that had been signed by appellant at its home office. Ward H. Watson, then a resident of Charleston, Indiana, was in appellant's Indianapolis office, in February, 1899, and Wishard handed him the bond in suit, and requested him to deliver it to appellee. Watson took the bond and delivered it to appellee, at the courthouse of Clark County. In delivering the bond, Watson followed Wishard's instructions. Appellant's officers who signed the bond for it, did not know, until after suit was brought, that Chapman never signed the bond. Before the bond was delivered appellant received $50 as the premium for the execution thereof, and still retains the same. There was never any offer to return this, or any former premium. After forwarding the bond to the branch office at Indianapolis, no investigation was made by appellant's officers, to ascertain whether Chapman signed the bond. After the bond in suit was handed to appellee by Watson, Chapman was continued as deputy treasurer until December 13, 1899, when he was discharged, because of the discovery of irregularities.

Of course appellant was under no obligation to return the premium received as a condition precedent to pleading a *non est factum*. Evidence in regard to the premium was admitted by the trial court for the purpose of enabling the jury to determine the intent of appellant's officers in sending the bond, in its incomplete condition, to appellee. We are of the opinion that the evidence is sufficient to warrant the finding that appellant delivered the instrument in suit to appellee, with the intention of being thereby bound, and

that the bond, in its incomplete condition was sufficient to warrant a recovery against appellant, for a breach thereof.

Counsel for appellant cite many authorities in support of the proposition that a contract containing the express condition found here must be held invalid in the absence 2. of its execution by the principal. *Markland Mfg. Co. v. Kimmell* (1882), 87 Ind. 560; *Allen* v. *Marney* (1879), 65 Ind. 398, 32 Am. Rep. 73; and *Deering Harvester Co.* v. *Peugh* (1897), 17 Ind. App. 400, 45 N. E. 808, cited by appellant, are to be distinguished from the case at bar by reason of the fact that here the instrument was delivered by the surety, instead of the principal, or some one acting in his behalf. Many cases from other jurisdictions are cited which do not involve the question of waiver by a surety for hire. However, it must be conceded that there is a lack of harmony in the cases of other jurisdictions. See monographic notes to following cases: *School District* v. *Lapping* (1907), 12 L. R. A. (N. S.) 1105; *City of Deering* v. *Moore* (1893), 41 Am. St. 534; *Novak* v. *Pitlick* (1903), 98 Am. St. 360; *Estate of Ramsey* v. *People* (1902), 90 Am. St. 188; *People* v. *Carroll* (1908), Ann. Cas. 1912 A 1014. The facts in *General R. Signal Co.* v. *Title Guaranty, etc., Co.* (1911), 203 N. Y. 407, 96 N. E. 734, were similar to the facts here. The bond, there, was signed by the surety company, and delivered to the obligee, a private corporation, to indemnify the latter against loss by larceny or embezzlement of its employe. The bond was not signed by the employe, and contained a provision that it should not be effective unless executed by the principal. The application of the employe for the bond, in that case, contained a promise by him to indemnify the surety company against any loss occasioned by the breach of the bond, while in the employe's application here there was no such promise. However, the difference is immaterial, as the law made Chapman liable to appellee for funds stolen or embezzled, and appellant would be subrogated to appellee's rights whenever it pays in-

demnity against such loss.   In its opinion the court of appeals said: "Either they (officers of the surety Co.) were dealing honestly with the plaintiff, intending to waive the condition of Ellis' signature, under the circumstances, or they were scheming to deceive and defraud.   The law will presume the former intention.   *   *   *   While the defendant required the employe's signature to the bond as a condition of its validity as an obligation, as it had a right to do, in holding it estopped from now insisting upon the condition, it loses nothing but a technical defense, which, if suffered to prevail in the face of the facts   *   *   *   would mean the lending of the aid of the court to the perpetration of a fraud."

Under the liberal provisions of our code of civil procedure the appellant might have made Chapman a party to the action and filed a counterclaim and obtained an adjudication of its rights against him to the same extent as if he had executed the bond, for the provisions of the latter created no liability of Chapman to it that did not already exist, by operation of law, from him to appellee.   It thus appears that Chapman's failure to execute the bond "was a mere technicality, which ought not to affect the rights of any of the parties concerned."   *Trustees, etc.* v. *Scheick* (1886), 119 Ill. 579, 59 Am. Rep. 830, 8 N. E. 189.   See, also, *United States Fidelity, etc., Co.* v. *Haggart* (1908), 163 Fed. 801, 91 C. C. A. 289; *City of Deering* v. *Moore, supra; Empire State Surety Co.* v. *Carroll County* (1912), 194 Fed. 593, 114 C. C. A. 435; *Woodman* v. *Calkins* (1893), 13 Mont. 363, 40 Am. St. 449, 34 Pac. 187; *State* v. *Bowman* (1841), 10 Ohio 445; *Rule* v. *Anderson* (1911), 160 Mo. App. 347, 142 S. W. 358; *People* v. *Carroll, supra.*

While the form of the instrument has been deemed of such importance, by some courts, as to render invalid an obligation, joint in form, but signed by the surety alone, we perceive in the form of the bond no insurmountable barrier against giving effect to the contract in

accordance with the intent of the obligee and the obligor that signed it. To hold otherwise, would, in many instances, as suggested by the Court of Appeals of New York, lend the aid of the courts to the perpetration of frauds, and we are convinced that sound reasons abound for holding valid a bond signed and delivered under the circumstances here disclosed.

The bond contained various provisions relative to notice of loss, 'etc. By appropriate paragraphs of answer appellant averred a failure on appellee's part to comply with these provisions. It is contended by appellant that the evidence is insufficient, on these issues, to support the verdict; it is also claimed that the evidence fails to show that Chapman's defalcations occurred during the life of the bond in suit. We do not deem it necessary to set out the evidence relating to these matters, but content ourselves with the general statement that the verdict is sustained by sufficient evidence on the issues in question.

Complaint is made of instruction No. 8, which informed the jury that in determining whether the bond in suit was delivered by appellant to appellee, they might take into consideration, as tending to show appellant's intention, at the time of giving possession of the bond to Watson, the evidence given which tended to show that appellant delivered to appellee, at the beginning of his first term, a like bond, unexecuted by the principal. There was no error. The intent of appellant in delivering possession of the bond in its incomplete form, to Watson, with instructions to give it to appellee, was a material fact, in the determination of which, evidence of similar transactions on recent occasions was proper for the jury's consideration.

Counsel for appellant contend that the court erred in giving certain other instructions, and in refusing certain ones it requested. For the most part, these contentions involve the same legal questions already determined in this

opinion. In other respects the action of the court forms no basis for the claim of harmful error. Indeed, considered as a whole, and viewed from the legal standpoint sanctioned by this opinion, the instructions are not subject to serious criticism. There is no reversible error in the record. Judgment affirmed.

NOTE.—Reported in 105 N. E. 769. As to the effect of delivery of official bond unsigned by principal obligor, see 12 L. R. A. (N. S.) 1108. For a discussion of the failure of the principal to sign an obligation as affecting the liability of a surety, see 2 Ann. Cas. 225; Ann. Cas. 1912 A 1014. As to the liability of a surety company as distinguished from the liability of an individual surety, see Ann. Cas. 1912 B 1087. See, also, under (1) 32 Cyc. 127; (2) 32 Cyc. 48; (3) 32 Cyc. 306; (4) 25 Cyc. 739; 19 Cyc. 656; (5) 32 Cyc. 132; (6) 32 Cyc. 138; (7, 8) 32 Cyc. 41; (9) 32 Cyc. 139.