## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF TENNESSEE

### IN THE

## SEPTEMBER TERM, 1918.

CAMBRIA COAL CO. *v.* NATIONAL SURETY CO.

*(Knoxville.* September Term, 1918.)

1. **PRINCIPAL AND SURETY. Contract. Rules of construction.**
While the contract of an individual or voluntary surety will be strictly construed, and doubts and technicalities resolved in surety's favor, contracts of companies acting as surety for compensation must be construed most strongly against the insurer and in favor of the indemnity. (*Post, p.* 276.)

Cases cited and approved: Philadelphia, to Use, etc., v. Fidelity & Deposit of Maryland, 231 Pa., 208; American Surety Co. of New York v. Pangburn, 182 Ind., 116; Hormel & Co. v. American Bonding Co., 33 L. R. A. (N. S.), 513; Railroad v. Fidelity & Guaranty Co., 125 Tenn., 658-690; Hunter v. Guaranty Co., 129 Tenn., 572-581.

2. **PRINCIPAL AND SURETY. Contracts. Failure of principal to sign bond.**
Where the principal or obligor is bound by law or collateral undertaking so that the rights of surety are not jeopardized, the failure to sign the bond renders the same only technically, and not substantially, defective, and does not release the surety. (*Post, pp.* 276, 277.)

Cases cited and approved: U. S. Fidelity & Guaranty Co. v. Haggart, 163 Fed., 809.

Cambria Coal Co. v. Nat. Surety Co.

Case cited and distinguished:   Star Grocer Co. v. Bradford et al., 70 W. Va., 496.

3. **PRINCIPAL AND SURETY.** Surety bonds. Signature of principal.

Where a surety bond neither expressly nor by implication obligates the employee to perform any act, duty, or undertaking same affixing his signature, and his name appears thereon only as employee and his application for bonds binds him to insure surety against all loss, the employee's failure to sign the bond does not release the surety. (*Post, pp.* 277-280.)

Case cited and distinguished:. State, Use of Treasurer, v. Bowman, 10 Ohio, 445.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— HUGH M. TATE, Chancellor.

FOWLER & FOWLER, for Cambria Coal Co.

CORNICK, FRANTZ, MCCONNELL & SEYMOUR, for Nashville Surety Co.

MR. JUSTICE BACHMAN delivered the opinion of the Court.

By a guaranty bond, dated November 13, 1917, the National Surety Company of New York undertook to indemnify the Cambria Coal Mining Company of Briceville, Tenn., against any act of larceny or embezzlement on the part of one James N. Landrum, bookkeeper and store manager for the obligee company. The penalty of the bond was $5,000, and the consideration for the undertaking was $25. There was default by

the employee, and on June 6, 1918, the complainant, Cambria Coal Mining Company, filed its bill in the chancery court of Knox county, seeking to recover on the bond executed by the defendant surety company the sum of $3,935.84, alleged to have been taken from it by its guaranteed employee Landrum, by acts amounting to larceny or embezzlement. A copy of the bond was exhibited with the bill.

Thereupon the defendant demurred to the bill, alleging:

"I. The bond, exhibited with the bill as 'Exhibit A' contains a provision that it shall be void unless duly executed by the employee, the principal therein, James N. Landrum; said bond also shows upon its face that the said employee has failed to execute the same.

"II. The bill fails to show the alleged acts of larceny or embezzlement which forms the basis of the complainant's right of action. The defendant prays judgment upon said demurrer as to whether it shall be required to answer."

Subsequently, consent of the court having been obtained, the complainant filed an amended bill, wherein it alleged that prior to the making of the bond, and before undertaking its execution, the defendant surety company had required Landrum, the employee, to make to it an application containing the following provisions, as shown by a copy of the form of application attached to the amended bill:

"The undersigned hereby agrees that you may indemnify the employer hereinafter named in any amount the employer may desire in favor of Cambria Coal Company (employer) to such extent and in such form as

may be agreed upon between you and the employer in respect of the acts of the undersigned in said employer's services as bookkeeper and store manager at Briceville, in the State of Tennessee, or in any other position in the employer's services to which the undersigned may be appointed.  . . .

"For good and valuable consideration, the undersigned hereby agrees to indemnify and save harmless the said National Surety Company from and against any and all loss, damages, fees, or expense which it may incur or sustain by reason of having agreed to indemnify as hereinabove set forth against the acts or omissions of the undersigned in the positions mentioned and referred to, or in any other position that may be filled by him, and to make good and reimburse to the company all sums of money which it may pay or become liable to pay in consequence of any such agreement of indemnity.  The undersigned also agrees that the company may at any or all times decline to assume indemnity in his behalf in any positions whatsoever, and may at any time terminate such indemnity assumed in his behalf in connection with any position whatsoever, and expressly releases the company from furnishing reasons for terminating its indemnity aforesaid, and from any and all claims, demands, damages, or causes of action that may accrue by reason of the failure of the company to furnish such reasons.  The undersigned also agrees that the company or any present or former employer of the undersigned, or any other person, firms or corporation, may disclose and furnish any information which they may have obtained

or may at any time obtain concerning the undersigned or his affairs, and the undersigned hereby expressly releases and discharges the company and each and all of the said employers, persons, firms, or corporations from any and all claims, demands, damages, or causes of action arising by reason of the furnishing or disclosing of such information whether the same be true or not. The undersigned also hereby agrees that the vouchers or other proper evidence showing payment by the company of any claim, demand, loss, damages, fees, or expenses in connection with any such indemnity in his behalf shall be conclusive evidence of the fact and amount of liability in that respect of the undersigned to the company, provided that such payment shall have been made by the company in good faith, believing it was liable therefor.''

The amended bill then alleged:

''After the defendant through its authorized agent received said application duly filled out and properly executed by the said James N. Landrum, it thereupon executed the bond herein sued upon, and delivered it to the complainant as a complete undertaking to protect the complainant against loss, which it might sustain by reason of the defalcations of said Landrum as therein specified; and said bond was accepted by complainant with the full understanding that it was being protected by the defendant against said misconduct of the insured, and as a consideration for such protection the complainant paid to the defendant $25 premium as aforesaid.''

By consent, the demurrer theretofore filed to the original bill was treated as standing to the amended bill, and upon hearing by the chancellor the first ground of the demurrer was sustained, from which action an appeal was prayed, and the case is before us on such appeal.

An examination of the original bond, filed subsequently to the exhibition of the copy hereinbefore referred to discloses a several undertaking by the National Surety Company to indemnify the Cambria Coal Mining Company against acts of larceny or embezzlement by its employee James N. Landrum.

The eighth, of nine provisions in the bond recited to be conditions precedent to any recovery thereunder, provides:

"This bond shall be void, unless it be duly executed by the employee, and the premium charged, actually be paid to the surety or its duly authorized agent, within sixty (60) days after the same shall become due and payable."

The bond is not signed by the employee and the question whether, upon the facts stated, there exists an enforceable undertaking on the part of the defendant surety company is here presented for the first time. The question has, however, frequently arisen in other states, and an examination of the authorities discloses many varying decisions, due largely to the varying contracts of suretyship presented for construction. While there is an apparent lack of harmony in the reported cases, there are found certain well-recognized principles applicable in the construction of such contracts.

It is well settled that while the contract of an individual or voluntary surety is to be strictly construed and all doubts and technicalities are to be resolved in favor of the surety, such construction is not applicable to the contracts of companies organized for the purpose of acting as surety for compensation. In the cases of the latter the contract is to be most strongly construed against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect; the rule of *strictissimi juris* does not apply. *Philadelphia, to Use, etc.,* v. *Fidelity & Deposit of Maryland,* 231 Pa., 208, 80 Atl., 62, Ann. Cas., 1912B, 1086, note; *American Surety Co. of New York* v. *Pangburn,* 182 Ind., 116, 105 N. E., 769, Ann. Cas., 1916E, 1126; note to *Hormel & Co.* v. *American Bonding Co.,* 33 L. R. A. (N. S.), 513; *Railroad* v. *Fidelity & Guaranty Co.,* 125 Tenn., 658-690, 148 S. W., 671; *Hunter* v. *Guaranty Co.,* 129 Tenn., 572-581, 167 S. W., 692.

So also from the array of conflicting authorities, differing as they do in the conclusions reached, it is to be found that, where the principal or obligor is bound by law or a collateral undertaking so that the rights of the surety are not jeopardized, the failure to sign the bond renders the same only technically, and not substantially, defective and does not operate to release the surety from liability thereon. *U. S. Fidelity & Guaranty Co.* v. *Haggart,* 163 Fed., 809, 91 C. C. A., 289, Ann. Cas., 1917C, 1073, note; *Star Grocer Co.* v. *Bradford et al.,* 70 W. Va., 496, 74 S. E., 509, 39 L. R. A. (N. S.), 184. The reason for the rule is well expressed in *Star Grocer Co.* v. *Bradford,* supra:

"The ground of their release, in case of the omission of a surety to sign, as contemplated by the parties, is the injury resulting to those who signed, in case they were bound, because of their inability to exact contribution from the omitted cosurety, since he is not bound at all. This result cannot be predicated of the omission of the principal to sign, when the law or another contract binds him as firmly and fully as the bond would have bound him, had he executed it, and for the benefit of the sureties under the law of subrogation, as well as that of the obligee. Every rule and exception is co-extensive only with the reason underlying it; and, as there is no substantial reason for discharge of the sureties under such circumstances, they should be held liable. The equitable remedies for subrogation and indemnity are as fully available and efficacious as if the principal had executed the bond. In no substantial sense, therefore, are the sureties affected by the omission."

The question of subrogation, or the rights of the surety to reimbursement by the principal, need not be considered in the instant case, the bill alleging and the copy of the application executed by the employee prior to the issuance of the bond clearly showing the contract between the principal and the surety, securing such rights to the surety.

The bond here in no wise, expressly or by implication, obligates the employee to the performance of any act, duty, or undertaking, save that of affixing his signature as provided in the eighth clause thereof. His name appears on the instruments only as the employee against whose default the surety proposes to indemnify

the obligee. There is nothing he is bound to do; nothing he is called upon to refrain from doing. As the surety's principal, if from this bond he can be denominated as such, so far as the bond is concerned, he is only responsible to the law. It is otherwise as to the application for the bond executed by the employee as a precedent condition to the making of the bond by the surety company; there is to be found the obligation of the employee to his surety. In addition to his agreement to the indemnifying contract between the surety and his employer, after furnishing exhaustive data concerning his race, color, and antecedents, and his present moral, social, and financial *status,* he unreservedly binds himself to insure the surety against every loss, all and several.

A consideration of the bond, unsigned by the employee, together with the application therefor, duly executed, presents only one material inquiry: What change has been made in the *status* of the surety company by reason of the failure of the employee to sign the bond, what rights has it lost or what liability has it incurred by the omission? It may be urged, as has been in argument here, that the signature of the employee would authorize the obligee, the complainant here, to maintain a joint action against the employee and the surety, and a recovery against both would obviate the bringing of another suit by the surety against the employee. Answer to this is that in the present suit the defaulting employee would probably be a proper party defendant had the complainant desired to so proceed against him. Certainly, had the bond been signed by the employee, together with the surety, it

would have been optional with the complainant to sue both jointly or either singly, and upon its election the surety could not complain. But, admitting the insistence a reasonable one, it is but a technical right of convenience in procedure; to maintain it for the benefit of the defendant results in the destruction of a substantial, fundamental right of the complainant. To this we are unwilling to accede.

To quote from *State, Use of Treasurer,* v. *Bowman,* 10 Ohio, 445:

"Great reliance is placed upon the fact that, if the instrument is not executed by the principal, it will affect the remedy over against him by the securities. There would be great force in this argument if the remedy were destroyed; but it is not; the force and the extent of this liability to them are unimpaired. Whether they could use the bond, *per se,* as evidence of his liability presents a question merely of convenience in the use of the right, but does not affect the right itself, any more than would the loss or destruction of the bond."

Where questions of convenience or facility of procedure oppose the presentation of rights as a matter of justice, the former must give way.

The bond herein was executed for the benefit of the complainant, delivered to it as the party to be indemnified, the consideration was paid, accepted, and is still retained by the surety company. Considering the bond in view of the principles heretofore stated, we deem it a valid and enforceable undertaking upon which the complainant is entitled to rely; the signature of the employee would in no wise augment the efficacy of the

instrument, no rights, additional to or greater than those already belonging to the surety as against the employee, would have accrued to the surety by reason of its being placed thereon; no liabilities were incurred by the failure of the employee to sign. The right of the surety company to place in its contracts such conditions as it may deem advisable is not to be denied, but the reasonableness or materiality of such provisions are to be determined by the courts in adjudging the rights of the respective parties thereto.

In stating our conclusions, we are not unmindful of the conflict in the authorities on the question herein involved, nor of the contrary views expressed in cases to which we have referred in the excellent brief of counsel for the defendant. It is our decision that, on the facts of this case, the surety company is not relieved of liability by reason of the omission of the employee to sign the bond. It results that the action of the chancellor must be reversed, and the cause remanded.

The defendant will pay the costs of this appeal.