KINGS, INCORPORATED, *v.* MARYLAND CASUALTY COMPANY.

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

532

Sells, Simonds & Bowman, for complainant, appellee.

Miller, Miller & Martin, for defendant, appellant.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit was brought to recover on a bond, of the schedule type, indemnifying the complainant employer against loss by defalcation, etc., of a listed employee. A demurrer was overruled by the Chancellor and defendant has appealed. The determinative question is one of construction of the contract of indemnity, specifically of the application to be given the word "bond" as it appears in certain context.

Provision is made for adding new employees to the schedule, and for striking out and cancelling coverage of any one or more, from time to time, and determination of liability accordingly. An express condition precedent to the right of recovery in all cases reads as follows: "(2) That any loss covered hereunder be discovered during the continuance of this bond or within six (6) months after its termination, and notice of such loss be sent," etc., etc., "within ten (10) days after the discovery of the loss," etc.

An employee named Bane was let out and the bond as to him cancelled upon notice effective as of July 1,

1929. A year later it was discovered that he was short as the result of defalcations previous to July 1, 1929, and the Bonding Company was then notified. The substance of the defense is that more than six months had been allowed to elapse since the termination of the bond as to this employee. The Chancellor was of opinion that the word "bond" as employed in the condition clause above quoted, referred to the bond as a whole held by the employer,—that the six months' limitation had application to the termination of the contractual relation of the insured employer to the Bonding Company as insurer, rather than the date of termination of the bonding liability as to any individual employee named in the schedule. He held, and it is here insisted, that the language "during the continuance of this bond," about the meaning of which this controversy arises, not being specifically directed or limited by express words, as it well might have been, to the several employees scheduled, must be construed to apply to the general bond obligation running to the employer.

It is plausibly argued that this bonding contract as a whole contemplates assumption of liability for distinct individuals, varying in number and personnel, with compensation payable accordingly, and that it is unreasonable to assume that the indemnor would undertake to continue liability on account of cancelled off employees indefinitely. It is argued that under this construction an unknown liability might continue for fifty years.

This could be so only if the contract was continued in force between the employer and the Bonding Company, upon the payment of the stipulated consideration from year to year, and only if the employer continued in ignorance of the loss. By other conditions the employer

is required to give notice within ten days to the home office of the Bonding Company. after discovery of the loss, to be followed by itemized information. Certainly, according to the law of averages underlying all forms of insurance, little risk of hurtful delay could exist under such conditions. And, too, even under the construction insisted on for the Company, many years might elapse after a defalcation, for if the employee continued with the employer and on the schedule, the six months limitation would not apply.

However, it must be conceded that the intention of the Bonding Company was probably in harmony with the construction now contended for. But, it must also be conceded that the meaning has been left in doubt, so much so that the learned and impartial Chancellor construes it otherwise. The Bonding Company was the draftsman of the contract, and this being so we are constrained to give the benefit of the doubt to the insured, in accordance with the universally approved rule that, "contracts of companies acting as surety for compensation must be construed most strongly against the insurer and in favor of the indemnity." *Cambria Coal Co.* v. *Nat. Surety Co.,* 141 Tenn., 270. Our cases are all to the same effect. The rule applies in all insurance cases when the contract has been "so framed as to make necessary a judicial construction." *Royal Ins. Co.* v. *Vanderbilt Co.,* 102 Tenn., 264; *Ins. Co.* v. *Dobbins,* 114 Tenn., 227, 239; *Hoffman* v. *Ins. Co.,* 88 Tenn., 735; *Co-Operative Stores* v. *U. S. F. & G. Co.,* 137 Tenn., 609, 621, and others.

It results that the decree must be affirmed.