OLD JORDAN MINING AND MILLING CO. *v.* SOCIÉTÉ ANONYME DES MINES.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 71. Argued October 27, 1896. — Decided November 30, 1896.

The only error urged in the court below, or noticed in its opinion, and which, consequently, can be considered here, goes to the insufficiency of the proof of the contract set up in the complaint, in which this court finds no error.

THIS was an action originally brought in the District Court for the Third Judicial District of the Territory of Utah by the Société Anonyme des Mines de Lexington, a French corporation, against the Old Jordan Mining and Milling Company, to recover one half the expense of certain repairs made to a canal or water ditch owned by them in common.

The complaint alleged that, since the month of March, 1883, these parties had continuously been tenants in common, owning an equal undivided interest in a certain canal, known sometimes as the " Galena," sometimes as the " Old Telegraph Canal," and sometimes the " Old Jordan Canal," together with the right of way and adjacent lands; that, between the 22d of October, 1883, and November 5, 1883, they entered into a contract in writing, in which it was agreed that they would make repairs, etc., and that each should pay one half of the expense thereof; that in the year 1884 the plaintiff made certain repairs of the value of $993.93; in 1885, of the value of $4025; in 1886, and until June, 1887, $4826.95, and, in 1887, from June 30 to December 31, $500, aggregating $10,345.88, for its share of which a statement or bill of items was furnished to the defendant; that the said defendant, on the 31st of December, 1884, paid to plaintiff $496.96, its half of the amount expended in 1884, but failed to pay its half of the other expenses incurred as aforesaid, leaving a balance due of $4675.98, for which judgment was demanded.

An answer was filed specifically denying the several averments of the complaint; and subsequently an amendment was made alleging that from the 1st of January, 1885, plaintiff had appropriated to its own use, without defendant's consent, all the water flowing through said ditch or canal, and that the reasonable value of that portion of the said water owned by defendant was $10 per day. The answer also made other allegations not necessary to be considered as the case was presented to this court.

In support of the contract alleged in the complaint plaintiff put in evidence the following letter, written by its manager to the manager of the defendant under date of October 24, 1883:

"DEAR SIR: During my present stay in this city, for the purpose of investigating and inspecting our different pieces of property in this Territory, my attention was particularly called to the bad state of the Jordan water ditch, which your and our companies own jointly. Considering that it is for our mutual interest to see that this property should be kept in proper shape, I beg you in the name of your company, if you do not judge that it would be advisable, while I am here, to have an understanding regarding this matter. I suggest that the necessary repairs should be done at once, and that hereafter the ditch should be kept in good condition, both companies paying their share of the incurred expenses.

"Will you please be kind enough to give this matter your prompt attention and favor us with an immediate reply, as I shall remain here only until the 15th of November."

To this letter the defendant's manager made the following reply:

"CLEVELAND, O., Oct. 30th, 1883.

"Mons. Eng. Renevey, l'administrateur délégué de Société des Mines de Lexington:

"Your letter of 24th inst., in regard to the necessity of entering into some arrangement for repairing and preserving the Jordan water canal, owned by your company and the one I represent, is rec'd. I agree with you that it is for our mutual interest that this property should be kept in good order, and I shall be pleased to join you in a reasonable arrangement for the purpose of protecting the property from decay, and I am very glad to find a gentleman willing to coöperate in a business way for the protection of our mutual interests. Your suggestion that the needed repairs should be done at once, and that each company pay its share of expense, and also for care for the future, is right, and I will direct Mr. Van Deusen, our engineer, to coöperate with you or any one you may delegate to examine the property and report what repairs are necessary, and the cost of the same. He is a very trustworthy and capable man, and I think you will find it for our mutual advantage to act under his judgment and let him

make the repairs. As neither of us are using the water at present, I would think it best to expend only so much as is necessary to prevent loss, and when we are ready to use the water, then we make permanent improvements. If you do not have time to go into details before you leave, will you please leave the matter in the hands of some one who will coöperate with me and Mr. Van Deusen — unless you are willing to have him do it, and each company pay one half the expense.

"I make this suggestion because I think Mr. Van Deusen can do the work satisfactory to both.

"Regretting that my absence from Salt Lake prevents me from a personal consultation with you, I am."

Other correspondence and evidence were introduced, which are fully set forth in the opinion of the court.

The case was tried before a jury, and a verdict rendered in favor of the plaintiff for the sum of $6028.76, upon which a remittitur was filed of $12.35, and judgment thereupon entered in the sum of $6016.41.

Upon appeal to the Supreme Court of the Territory this judgment was affirmed. 9 Utah, 483. Whereupon defendant sued out a writ of error from this court.

*Mr. L. T. Michener* for plaintiff in error. *Mr. C. W. Bennett* and *Mr. W. W. Dudley* were on his brief.

*Mr. Jeremiah M. Wilson* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

1. As the only error urged in the court below, or noticed in its opinion, turns upon the alleged insufficiency of the proof of the contract set up in the complaint, we shall confine our consideration of the case to that point, notwithstanding that other errors are assigned in this court, and, to some extent, noticed in the brief of the plaintiff in error. We have repeatedly held that the failure to present and insist upon errors

assigned in the court below constitutes an abandonment, or waiver, of all the errors so assigned, not vital to the question of jurisdiction, or the foundation of the right; and this court can only be called upon to consider such assignments as are pressed upon the attention, or noticed in the opinion of the court below. If the action of the court below were correct as to the errors insisted upon as ground for reversal, none others will be considered here. *Montana Railway Co.* v. *Warren*, 137 U. S. 348, 351; *San Pedro &c. Co.* v. *United States*, 146 U. S. 120, 136.

2. From a perusal of the correspondence, set forth in the statement of facts, it will appear that plaintiff's introductory letter contained the following propositions: (1) that the company should come to an understanding with regard to the keeping of the ditch "in proper shape"; (2) that the necessary repairs should be done at once; (3) that thereafter the ditch should be kept in good condition; (4) that both companies should pay their share of expenses.

In its reply, the defendant agreed: (1) that it was for their mutual interest that the property should be kept in good order, and that it would be pleased to join the plaintiff in any reasonable arrangement for the purpose of protecting it from decay; (2) that it approved of plaintiff's suggestion that the needed repairs should be done at once; that each company should pay its share of expenses, and also for its care in the future; (3) that it would direct Mr. Van Deusen, its engineer, to coöperate with the plaintiff, or any one that plaintiff's manager might delegate, to examine the property and report what repairs were necessary, and the cost of the same; (4) that, as neither party was using the water at present, the writer thought it best to expend only so much as would prevent loss, and that when they were ready to use the water, they would make permanent improvements; that plaintiff should leave the matter in the hands of some one who would coöperate with the writer of the letter and Mr. Van Deusen, unless plaintiff were willing to have Mr. Van Deusen do it, and each pay one half the expense.

Conceding, for the purposes of the case, that this corre-

spondence standing alone did not contain a completed under-standing for the repair of the property — at least beyond such repairs as were immediately necessary — it evidently was of such a character as to lead the plaintiff to believe that any arrangement it might make with Van Deusen, the engineer, for such repairs as were necessary to prevent loss to the property would be respected by the company.

Upon the receipt of defendant's answer, plaintiff proceeded to make certain repairs, and on September 24, 1884, addressed a letter to Van Deusen, stating that the expenses upon the canal for the eight months immediately preceding amounted to $643.85, giving the items, and requesting him to remit one half the amount. There was also evidence tending to show that the repairs had been made after a visit to the canal by Van Deusen and Lavagnino, an agent of the plaintiff company, when Van Deusen asked the latter to report to him what he thought would be necessary to be done, and that they agreed upon the work; that after receiving the letter of September 24, 1884, Van Deusen said that Mr. Holden, the manager of the company, would be there pretty soon; that he was acting under Holden's instructions ; and that it would be best to wait until he came. On December 14, 1884, plaintiff wrote to Holden, the manager of the company, stating that the total expenditure for the year had been $993.93, and that the officers of his company desired to ask his coöperation " towards making next spring substantial repairs on the canal, so as to bring it up to usefulness " ; and also " toward making all titles about the canal clear, and to proceed against trespassers." On December 31, defendant paid one half of the bill for that year, but made no comments upon the propositions contained in the plaintiff's letter.

There was also evidence tending to show that in the spring of 1885 Mr. Lavagnino examined the canal with Mr. Van Deusen in order to ascertain what repairs were absolutely necessary and urgent. As Mr. Lavagnino says: " We made an estimate. He told me that he would send the estimate to his company, and I would send the same estimate to my company. . . . These estimates were made because we

were waiting for Mr. Holden. Mr. Van Deusen said that according to the instructions he had last year, he would have no objection, but that I remembered what Mr. Holden said last year, that he paid the bill, and that he didn't care to take any responsibility, but he would let Mr. Holden do it himself. . . . He was telling me all the time that he would be here very soon. This conversation was in the latter part of March, 1885."

On August 27, 1885, Lavagnino addressed Holden a note calling his attention to the canal, stating that in the spring he had Van Deusen with him along the canal to see what repairs were indispensable, in order to risk a little water in it, and to prevent a total ruin of it; that the expenses run at about $2000; and saying that he would be able to present him a statement, and hoped that he would approve the same in behalf of the defendant. He also expressed the wish that he would like to have Mr. Holden inspect the canal to satisfy himself that he had done the most needed things for its protection, and to get his opinion "about the probable expenses for keeping up the canal to even its present low condition, and to define in a sure way how far you think it right for the Old Jordan company to stand the French company by."

On September 1 he sent him a statement of what he had paid during the last six months, amounting to $2204.23, and asking for its proper contribution from the Old Jordan company.

Here, at least, was a distinct and unequivocal notice that repairs had been made, and that the plaintiff looked to defendant for a proportion of the cost. In view of their previous correspondence defendant could have had no doubt that such repairs were made upon the faith of the letters that had passed between them, and, if it did not intend to be bound, it was its duty to repudiate the bill at once, and give notice that the repairs were unauthorized. Instead of this, however, Mr. Holden on September 2 promptly acknowledged the receipt of the statement; said that the owners were expected early in the month, and desired them to examine the canal with him and decide the matter, both for the present and for future expenditures; and suggesting that, as tenants

in common, it was best for them "to agree upon some line of policy by which either party should be allowed to expend money on the property and thus bind the other to payments."

On November 19, he wrote to him again, desiring him to make a complete statement of the expenditures made during the last year, which had been necessary for the protection of the canal, and send them to him at Cleveland. He said that the owners had been opposed to spending any more money than was absolutely necessary for the protection of the canal; that when the Jordan company was ready to use it they would make improvements and repairs, and that he was quite certain the company would be disposed to do whatever was equitable.

On February 10, 1886, Lavagnino addressed a letter to Mr. Holden at Cleveland, enclosing a statement of the total expenditures upon the canal during 1885, which amounted to $4025, stating that most of these expenditures had been necessary for the protection of the canal, and that the expenditures were either evidently indispensable, or were considered as necessary by Mr. Van Deusen and himself.

To this Mr. Holden replied on February 16, stating that he was pleased with the fair and candid statement made with regard to the expenditures; that he would submit them to the board for consideration, and felt sure they would be acted upon in an equitable manner. The letter further stated that the board did not desire to spend any more money than was absolutely necessary to protect the canal and save larger expenditures in the future; that if they were using the water, or contemplated its immediate use, they would have no hesitation in joining in any judicious expenditure; that "it was the hope of the management of our company that you would be willing to make such expenditures upon the canal as in your judgment would seem to be best, and that you should report the same to us from time to time, and that when we should be ready to use the water, that we should expend for the benefit of the canal a like amount, or, in case we should find it at that time in such good repair that it were not necessary to expend as much money as you had expended,

that we should then pay to you the half of these expenditures made by you, as indicated in your different letters up to the 10th inst., less, of course, at any time, the amounts which we should expend upon the canal."

The next letter was not written until July 30, 1887, and in this Mr. Lavagnino states that the expenditures upon the canal property during the year 1886 and the first half of 1887 had been $4826.95; that in his opinion the work had been necessary for the protection of the canal property, and that whatever value there was in it at present was "mainly due to the perseverant attention bestowed upon it during the last four years," and that he was willing to settle by arbitration any difference between them. He also gave a list of all the expenses put upon the canal as common property, which amounted to $10,745.88, and asked him to settle for his share of the expenses.

A further letter was written on February 6, 1888, stating that the expenses for the last half of 1887 had been $500.

A reply was made to this letter by Mr. Van Deusen on February 11, 1888, acknowledging the receipt of the statement of February 6, 1888, and asking him to forward him a completed statement of his account against the Old Jordan company, that he might report the same to the owners, and demanded that the statements show how and where each item of expense was applied, that they might be assured that such application was made for the protection of the property only.

To this Mr. Lavagnino replied, under date of February 14, sending copies of statements rendered to Mr. Holden, promising to give any further details required, and requesting a settlement of the account within ten days.

This letter completed the correspondence. In this connection the court charged the jury as follows: "If you believe from a preponderance of the evidence that the contract was made as alleged, as I have stated it to you, and that the plaintiff made the repairs during the time specified, and that the repairs were necessary to the preservation and protection of the property, and that the defendant has been requested to pay and has refused, then you should find for the plaintiff the

amount of such one half of expenditures." It further charged
that if the defendant were liable under the contract it was
liable only for the reasonable and necessary expenditures to
preserve and protect the property, and that such expenditures
must have been made for the benefit of the common interest
of both parties to preserve and protect them.

We see no reason to doubt that the case was properly sub-
mitted to the jury. In determining whether there was a bind-
ing contract between the parties arising from the letter of the
plaintiff of October 24, 1883, and the answer of the defendant
thereto, the jury were at liberty to consider, in connection
with those letters, the subsequent correspondence and the con-
duct of the parties in respect to the common property, and
the interpretation put upon them by the parties themselves.
Not only was the canal visited and examined by the agents
of both parties acting in concert, but, from the beginning to
the end of the correspondence there was no refusal to co-
operate on the part of defendant, no disavowal of an agree-
ment between them, nor any expression of dissent as to the
propriety of what had been done toward the preservation of
the property. It is true that the defendant was not making
use of the canal, but its preservation from ruin was an object
of as much importance to one party as to the other. The
conduct and letters of the defendant were such as to justify
the plaintiff in believing that the repairs that it was making
to the canal were assented to and approved by it, and it
was, at least, a question for the jury to say whether the plain-
tiff was not justified in believing that the defendant would
pay its proportion of them, and whether the two first letters
were not treated by both as embodying the arrangement
between them.

We see no error in the record of which the defendant is
entitled to complain, and the judgment of the court below is
therefore

*Affirmed.*

Mr. Justice Peckham was not present at the argument, and
took no part in this decision of this case.