## DINKELSPEEL v. O'DAY.

No. 2700.   Decided August 7, 1915 (151 Pac. 344).

1. GAMING — MORTGAGE — ILLEGAL CONSIDERATION. Defendant, in order to prevent a sale of her property under a mortgage foreclosure, borrowed from her tenant, who was in possession of the premises, a sum of money out of which she paid the judgment and costs in the foreclosure action and retained a part thereof for her personal use. Plaintiff took a mortgage on the property to secure this loan, which he was induced to make in order that he might not be dispossessed or disturbed in a gambling business which he conducted on the premises. *Held*, that he could lawfully foreclose the mortgage and recover the money loaned, such money having been used legitimately, and no part thereof having been devoted to gambling purposes, although such might have been the intention of the lender. (Page 21.)

2. CONTRACTS—CONSIDERATION—ILLEGALITY. Although illegal features may be indirectly connected with a transaction involved in a suit, yet plaintiff may recover if his cause of action is otherwise legitimate and he can make out his case without calling to his aid the illegal agreement. (Page 23.)

Appeal from District Court, Second District; *Hon. N. J. Harris,* **Judge.**

Suit by Joe Dinkelspeel against Josephine O'Day ·to foreclose a mortgage.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*T. Marioneaux, B. N. C. Stott* and *Ross M. Bonny,* for appellant.

*Wiley & Wiley* for respondent.

## RESPONDENT'S POINTS.

"An agreement will be enforced even, if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by· an independent consideration or if the plaintiff will not require the aid of an illegal transaction to make out his case." (9 Cyc., 556, cases cited in notes 84-85-86-87-88.)

From the case of *Ware* v. *Curry,* 67 Ala. 274, we take the following excerpt: "The test by which to ascertain whether a contract impeached as illegal is capable of enforcement is whether the plaintiff requires the aid of an illegal transaction to support his case. If he does not, if he has rights originating in transactions not offensive to law and has the right to recover independent of an illegal transaction, such transaction, though he may have participated in it, cannot be employed to defeat him."

To the same effect are: *Yarborrow* v. *Avant,* 66 Ala. 526; *Johnston* v. *Smith,* 70 Ala. 108; *Martin* v. *Hodge,* 47 Ark. 378-58 Am. Rep. 763; *Minnesota Lumber Co.* v. *Whitebreast Coal Co.,* 56 Ill. Appeals 248; *National Distilling Co.* v. *Cream, etc., Co.,* 86 Wis. 352; *Wilson* v. *Owen,* 30 Mich. 474; *Wadsworth* v. *Bennett,* 44 N. Y. 273, and *Irwin* v. *Irwin,* 29 L. R. A. 292.

"The obligation will be enforced indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that plaintiff does not require the aid of the illegal transaction to make out his case." (*Armstrong* v.

*American, etc., Bank of Chicago,* 144 U. S. 433, quotation from p. 470.)

FRICK, J.

This is an action in equity to foreclose a mortgage. The complaint is in the usual form in such actions under our statute. The defendant, in her answer to the complaint, counterclaimed for rent which she alleged the plaintiff owed and had failed to pay as her tenant of the mortgaged premises; for damages for removing certain partitions in the building on the mortgaged premises, and in failing to restore the same; for damages in failing to comply with his oral agreement to lease the building on the mortgaged premises for a term of three years at a stipulated rental. The defendant also set up the defense that the note and mortgage in suit were void for the reason that the money secured thereby was loaned by the plaintiff for the purpose of enabling the plaintiff to carry on a gambling business. It is claimed that the plaintiff advanced the amount of money named in the note and mortgage in suit to the defendant to enable her to discharge the judgment foreclosing a prior mortgage and thus prevent the premises of which the plaintiff was in possession as defendant's tenant from being sold, and in that way to secure to him undisturbed possession of said premises to carry on said gambling business. The court found the issues in favor of the plaintiff, except that it found that the defendant had sustained damages to the rented building in the sum of $150 for which plaintiff was liable and which was deducted from the amount found due him on the note and mortgage. The court accordingly entered a decree foreclosing said mortgage and ordered the premises sold to satisfy the same. The defendant appeals from the decree.

Numerous errors are assigned, but we shall consider those only that are argued in the brief of counsel. The principal error relied on is that the court erred in refusing to declare the note and mortgage illegal for the reasons hereinafter appearing. The facts regarding the loan and how and for what purpose it was made are not in dispute. The only dispute between the parties which is material here is that the defend-

ant claimed that the plaintiff had orally agreed to lease the mortgaged premises when the loan was made for a term of three years at a rental of $150 per month and that the debt represented by the mortgage was to be paid from the accruing rent and the amount she should have been allowed as damages. The court, however, found the facts on those issues against the defendant's contentions, and we think the court's findings, on the record, are amply supported by the evidence.

The facts respecting the loan and execution of the note and mortgage are substantially as follows: The mortgaged premises are situated in Davis County, several miles north of Salt Lake City. Early in March, 1912, the plaintiff rented the house on the mortgaged premises for the purpose of conducting what we have designated a gambling business. At that time the defendant was indebted to one Bamberger in the sum of $2,000, and in addition thereto accrued interest and costs, and, to secure said debt, she had mortgaged the premises in question. The mortgage was, however, made payable to the Salt Lake Valley Loan & Trust Company, under which name said Bamberger was carrying on business. Foreclosure proceedings had been commenced by said mortgagee to foreclose the mortgage, and a decree or judgment of foreclosure had been entered, and the premises were about to be sold, when the loan in question was made. It seems Mr. Bamberger was insisting on obtaining possession of the premises, and, if he had succeeded in doing so, it further seems that the plaintiff would probably have been dispossessed, or at least disturbed in his possession, of the premises and in conducting the gambling business aforesaid. In order to avoid being dispossessed at that time, the plaintiff loaned the defendant sufficient money to satisfy the judgment and costs, which according to defendant's testimony, amounted to about $2,500. She, however, says that she wanted $250 in addition for "my own personal use." The plaintiff accordingly loaned her $2,750, to secure the payment of which the defendant made and delivered the note and mortgage in question. Both the note and mortgage are dated March 26, 1912, and were made payable "on or before one year after date" with eight per cent. interest, which was two per cent.

less than defendant was paying on the Bamberger judgment. The defendant paid the Bamberger judgment and retained, as she says, about $250 out of the $2,750 for her own use. It is not claimed nor contended that the Bamberger mortgage was illegal; nor that any of the money loaned was used for any other purpose than to satisfy the Bamberger judgment, which was a subsisting lien on the mortgaged premises when the note and mortgage in question were given and for the personal use of the defendant as aforesaid. There can be no doubt therefore that the money loaned was used for a legal and legitimate purpose, namely, to discharge a legal and subsisting lien on the mortgaged premises and for the personal use of the defendant. While it is true that the plaintiff may have been induced to make the loan so that he might occupy the mortgaged premises for gambling purposes, yet it is equally true that none of the money borrowed by the defendant was devoted to or used for such purposes. Under such circumstances, there is no law which prohibits a recovery of the money loaned either in a court of law or equity. The doctrine which applies under such circumstances is well stated by the Supreme Court of Maine in the case of *Tyler* v. *Carlisle*, 79 Me. 210, 9 Atl. 356, 1 Am. St. Rep. 301, where it is held:

"Money loaned for gambling purposes but not so used by the borrower may be recovered of him by the lender."

Now, if it be assumed that in the case at bar the plaintiff actually felt impelled to make the loan because he desired to remain in possession of defendant's premises so that he might continue his gambling business, yet she did not devote a dollar of the money borrowed, so far as the evidence shows, to foster or aid in any way the gambling business in which plaintiff was engaged. How, then, can it be said that the money was borrowed for gambling purposes, or that it was borrowed or applied to an illegal and prohibited use or purpose? The use made of the borrowed money was a legal, and, as we think, a proper, if not a commendable, one. If it was not commendable or moral, it was only because of plaintiff's motives in making the loan, and not because the money loaned to the defendant was intended to be, or was actually, devoted to an

illegal or even an immoral or improper purpose. The facts of this case fall far short of bringing it within the principles governing the cases cited by counsel for the defendant. In all the cases cited by them the money loaned was intended to be, and was, used for an immoral and illegal purpose, which was known to and approved by the lender. Not so here.

There is, however, still another reason why the plaintiff may recover in this case, which is equally well supported by the authorities. It is this: The mortgage, as we have seen, was not given for an illegal or immoral purpose, and, so far as plaintiff's case was concerned, nothing was made to appear that the transaction was 'tainted in any way or that the consideration was either illegal or vicious. The rule in that regard is clearly stated in the case *Minnesota Lumber Co.* v. *Whitebreast Coal Co.*, 56 Ill. App. 257, in the following words:

"The claim which forms the basis of the suit is perfectly legitimate. The sale and delivery of coal is not illegal. It is only option contracts to buy or sell coal that are prohibited by statute. Although there may be some illegal feature indirectly connected with a transaction involved in a suit, yet the plaintiff may recover if his cause of action is otherwise legitimate and he can make out his case without calling to his aid the illegal agreement. The test of whether the demand can be enforced at law is whether the plaintiff requires the aid of the illegal contract to establish his case."

The same thought is expressed in a slightly different form by the Supreme Court of Arkansas in *Martin* v. *Hodge,* 47 Ark. 378, 1 S. W. 694, 58 Am. Rep. 763. It is there said:

"The test to determine whether a plaintiff is entitled to recover in an action * * * is his ability to establish his case without any aid from an illegal transaction. If his claim or right to recover depends on a transaction which is *malum in se* or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery."

To the same effect are *Beitman* v. *Steiner Bros.*, 98 Ala. 241, 13 South. 87; *Smith* v. *Dinkelspiel*, 91 Ala. 528, 8 South. 490; *Wilson* v. *Owen,* 30 Mich. 474. Many cases are cited in the foregoing cases, both English and American, to which we need not specially refer.

By what we have said we do not hold that where a contract is prohibited by law, or the consideration thereof is illegal or vicious, a defendant may not successfully plead and prove, if he can, the illegality and thus frustrate a recovery by the other party to the contract. The rule in such cases is very tersely, and as we conceive correctly, stated in 9 Cyc. 549, thus:

"While it may not always seem an honorable thing to do, yet a *party to an illegal agreement* is permitted to set up the illegality as a defense, even though it may be alleging his own turpitude." (Italics ours.)

The doctrine is applied in the following cases: *Irvin* v. *Irvin,* 169 Pa. 529, 32 Atl. 445, 29 L. R. A. 292; *Adams* v. *Adams,* 25 Minn. 72; *Ellicott* v. *Chamberlin,* 38 N. J. Eq. 604, 48 Am. Rep. 327, and note.

As already pointed out, there was nothing illegal or immoral in lending the money, or in executing the note evidencing the loan, or in giving the mortgage to secure it. What the defendant complains of lies back of that transaction and has no necessary connection with it. This case therefore falls squarely within the doctrine announced in the cases first cited and is foreign to the doctrine illustrated in those cases last referred to.

There are other errors assigned, but there is no merit to any of them, and hence we shall not pause to discuss them.

The judgment is affirmed, with costs.

STRAUP, C. J., and McCARTY, J., concur.