### FIRST NAT. BANK OF SLEEPY EYE, MINN., v. SLEEPER et al.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1926.)

No. 7050.

**1. Bills and notes ☞139(2)—Agreement for extension of note held supported by sufficient consideration.**

Agreement for extension of note and mortgage, whereby maker promised in return for extension to pay interest for extended time, and not to require holder to accept payment sooner, *held* supported by a sufficient consideration.

**2. Bills and notes ☞137(1).**

That holder of note did not sign extension agreement does not demonstrate that he is not bound by its terms, if he accepted it.

**3. Contracts ☞35.**

Contract may be made by accepting a writing containing proposed terms, though acceptor does not sign it.

**4. Guaranty ☞56—Holder of note held to have accepted extension agreement negotiated without notice to guarantor, and subsequent purchaser with knowledge precluded from recovering on guaranty.**

Holder of note *held* to have accepted extension agreement negotiated without notice to guarantor, precluding subsequent purchaser, with notice of extension, from recovering on guaranty.

**5. Appeal and error ⬅1048(3)—Permitting question embracing an assumption that bank had extended time for paying note, if error, held not prejudicial, in view of direction of verdict.**

Permitting question to be asked witness, which embraced an assumption that bank had entered into agreement extending note, if error, *held* not prejudicial, where case was finally decided by court, which directed verdict, especially where same witness had previously testified without objection that bank had extended time of paying note.

In Error to the District Court of the United States for the District of North Dakota; Andrew Miller, Judge.

Action by the First National Bank of Sleepy Eye, Minn., against S. H. Sleeper and others. Judgment on directed verdict for defendants, and plaintiff brings error. Affirmed.

L. J. Palda, Jr., C. D. Aaker, and C. E. Brace, all of Minot, N. D., for plaintiff in error.

Dudley L. Nash, of Minot, N. D., for defendants in error.

Before SANBORN, Circuit Judge, and MUNGER and JOHNSON, District Judges.

MUNGER, District Judge. The plaintiff in error brought suit to recover upon a general guaranty of the payment of a promissory note. At the conclusion of the evidence the court directed a verdict in favor of the defendants. The assignments of error relate to the direction of a verdict and to the admission of evidence. Most of the facts are undisputed. John W. Dalton executed a promissory note dated September 15, 1914, agreeing to pay J. C. Peters $4,000 on October 1, 1919, with interest at 6 per cent. payable annually, as evidenced by six interest coupons attached to the note. He also executed a mortgage to J. C. Peters upon land in North Dakota, to secure the payment of this note. Peters was an officer of the Mohall State Bank. This bank sold the note and mortgage to the plaintiff bank, and Peters executed an assignment of both to the plaintiff. As a part of the transaction a guaranty was given, signed by Peters, and by S. H. Sleeper, who was president of the Mohall State Bank, and by A. L. Sleeper, who was cashier of the bank, and this suit is founded upon this guaranty, and was brought against the three persons who signed it. The guaranty reads as follows:

"Mohall, N. Dak., Sept. 21, 1914.

"For and in consideration of the purchase by the First National Bank, Sleepy Eye, Minnesota, through C. D. Griffith, of a first mortgage note of four thousand ($4,000) dollars, made by John W. Dalton, dated September 15, 1914, due October 1, 1919, bearing interest at the rate of 6 per cent., payable annually, on the first day of October of each and every year. Said note being secured by first mortgage on the S. E. ¼ of section 33, and the S. W. ¼ of section 34, township 161 north, of range 85 west of the fifth principal meridian, I hereby guarantee the payment of the above-described note and interest on same as represented by six interest coupons at their respective maturities, waiving notice of protest and nonpayment. Also waiving our right to require the foreclosure of the mortgage by the owner or holder of said mortgage before bringing action on this guarantee.

"The option is hereby given the signers of this guarantee to take up the first mortgage at any interest due date by paying the principal and interest then due.

"Made in triplicate

"[Signed]        S. H. Sleeper.
"A. L. Sleeper.
"J. C. Peters."

The defense chiefly relied upon, was a claim of release because of an extension of the time of payment granted to the signer of the note without the knowledge or consent of the guarantors. The plaintiff assigned the notes and mortgage to Alexander Blanchard of Minneapolis, Minn., January 2, 1915. After the note became due, and on October 14, 1919, Griffith, president of the plaintiff bank, wrote a letter to Peters, as president of the Mohall State Bank inclosing an extension agreement of this note and mortgage, and five interest coupons to be executed by Dalton, the maker of the note. The letter stated that "on return of the papers properly signed and a draft for $120 our commission, the loan will be extended for five years." Dalton signed the extension agreement, and the five coupon notes. The extension agreement recited that it was made October 14, 1919, between Alexander Blanchard and John W. Dalton, that Blanchard was the owner and holder of the note assigned to him, and that the mortgage was assigned to Blanchard on January 2, 1915. It then recited that "whereas, at the special instance and request of the, said John W. Dalton, single, the said Alexander Blanchard has extended the time and payment of the said note and mortgage from October 1, 1919, to October 1, 1924," in consideration of the extension, Dalton agreed to pay the

principal of the note at its maturity, as extended, and to pay the interest thereon according to the five extension interest coupon notes attached, not to require the holder to accept payment except as provided in the extension agreement. This extension agreement was acknowlege by Dalton on October 20, 1919, was sent to the plaintiff bank with a draft for $120. The plaintiff sent the extension agreement to Blanchard. Griffith, called as a witness, testified that Blanchard did nothing in connection with the extension agreement, but testified that the bank received the $120 as commission and extended the time for payment of the note. He also testified that the plaintiff accepted the extension, and that there was correspondence that stated that the bank would send the extension agreement to Blanchard, and that, if he accepted it, it would go through, and, if not, it could be returned. Some time afterward, the date of which is uncertain, the plaintiff bank became the owner of the note and mortgage, and in 1923 brought this suit. It appeared that the two coupon interest notes, given under the extension agreement, due October 1, 1920, and October 1, 1921, had been paid. The proof showed that the signers of the guaranty had no notice of any extension of payment of the note, or of any attempt to obtain an extension.

[1-3] The main question in the case is the direction of a verdict against the plaintiff. The plaintiff claims as the original party to whom the general guaranty was made available, and as an assignee of Blanchard by virtue of the ownership of the note and mortgage. It concedes that the guarantors were released from their obligation if Blanchard made an agreement with Dalton to extend the time of payment, but it claims that no agreement for extension was made, because Blanchard did not sign the agreement and the agreement did not recite a consideration. The agreement sufficiently shows a consideration by way of mutual promises of the parties (13 Corp. Jur. 327), in that, in return for the extension of time granted by Blanchard to Dalton, Dalton agreed to pay interest on the principal of the note to Blanchard for five years, and not to require the holder to accept payment sooner. The fact that Blanchard did not sign the extension agreement does not demonstrate that he was not bound by its terms. A contract may be made by accepting a writing containing the terms of the proposed contract, although the one accepting it does not sign it. Familiar instances of such contracts are policies of insurance, deeds, railway tickets, receipts containing contractual terms. The intention of one receiving a written instrument to be bound by its terms as the contract may be shown by his receiving and retaining the writing and by his acting upon it as a valid contract. Sellers v. Greer, 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589; Dows v. Morse, 62 Iowa, 231, 17 N. W. 495; Reed v. Coughran, 21 S. D. 257, 111 N. W. 559; Parker v. Carter, 91 Ark. 162, 120 S. W. 836, 134 Am. St. Rep. 60; Midland Ry. Co. v. Fisher, 125 Ind. 19, 24 N. E. 756, 8 L. R. A. 604, 21 Am. St. Rep. 189; Bowen v. Chenoa-Hignite Coal Co., 168 Ky. 588, 182 S. W. 635; Jordan Mining Co. v. Société des Mines, 164 U. S. 261, 17 S. Ct. 113, 41 L. Ed. 427; 1 Page on Contracts, §§ 188, 1175; 13 Corp. Jur. 277.

[4] The extent of the agency for Blanchard of the plaintiff bank, and of Griffith, its president, is not definitely shown. Blanchard was a man to whom Griffith had agreed to sell mortgages, and to whom this note and mortgage was transferred soon after it was acquired by the plaintiff. So far as the evidence discloses, the transactions relating to the preparation of the extension agreement and the new interest coupons, the correspondence as to the proper execution of it, the collection of the last coupon note on the original note due to Blanchard, were all performed as one series of transactions by the plaintiff or by Griffith, assuming to act on behalf of Blanchard. Griffith refused to forward the extension agreement to Blanchard, after Griffith had received it, until the amount of the last coupon on the original note had been paid. The extension agreement was sent to Blanchard, while he owned the original note, but after it was due. The amount of the last interest coupon on the original note was probably also sent to him by Griffith at the same time. Griffith testifies that Blanchard did nothing in connection with the extension agreement, but this must be understood as saying that Blanchard did not return it to Griffith, nor express any dissatisfaction with it. It must also be understood as saying that Blanchard retained it. Attached to this extension agreement when it was sent to Blanchard were the five interest coupons, but the first two of these, one due in October, 1920, and one due in October, 1921, were not attached when the plaintiff brought this suit. It is improbable that Blanchard did not examine the extension agreement when he received it, nor examine the interest coupons attached to it. The only natural conclusion to be drawn

from these facts was that Blanchard accepted the extension agreement and the coupons attached to it, as evidencing a new contract between himself and Dalton. The plaintiff claims as the owner of the note, but no claim is made of a purchase without notice of the extension agreement. The direction of a verdict was not erroneous.

[5] Objection is made because the trial court allowed a question to be asked of Griffith, which embraced the assumption that the plaintiff bank had entered into an extension agreement, because there had been no evidence that the plaintiff bank had made such an agreement. It appears, however, that Griffith had previously testified, without objection, that the plaintiff bank had extended the time of paying the note. The ruling of the court was not prejudicial, even if erroneous, as the case was finally decided by the court.

The judgment will be affirmed.