## SOUTHERN SURETY CO. v. SLAYTON.

### No. 5525.

Circuit Court of Appeals, Sixth Circuit.

June 12, 1930.

U. G. Denman, of Toledo, Ohio, and Giles Patterson, of Jacksonville, Fla. (Denman, Miller & Wall, of Toledo, Ohio, on the brief), for appellant.

G. D. Welles, of Toledo, Ohio, and S. D. L. Jackson, of Youngstown, Ohio (Tracy, Chapman & Welles, of Toledo, Ohio, on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Suit by appellee against appellant, a compensated surety upon a surety bond, to recover damages alleged to have been sustained by reason of the failure of Harty & Co., the principal in the bond, to perform its obligations to appellee under a subcontract. Appellee W. L. Slayton, doing business as W. L. Slayton & Co., was a bond buyer and interested in the purchase of Florida drainage district bonds. Harty & Co. was a partnership composed of A. J. Harty, R. R. Lewis, and A. F. Wineman, and was engaged in digging drainage ditches in Florida by contract. In 1925 business conditions in Florida were such that before a buyer could purchase drainage bonds it was frequently necessary that he furnish a contractor. The Iona district undertook to establish a drainage system with the proceeds of a bond sale. About July 5, 1925, Brooks and Liska, representing respectively Harty & Co. and Slayton, agreed that in the event Slayton could buy the Iona bonds and secure the construction contract he would sublet the work to Harty & Co. On July 13, 1925, this agreement was confirmed in Plaintiff's Exhibit 1 (contract between Slayton and Harty & Co.), which provided that it should not be binding until the construction contract to be secured by Slayton should be approved by Brooks for Harty & Co. upon the margin of Plaintiff's Exhibit 1. On the same date Slayton became the successful bidder for the Iona bonds and also acquired the construction contract and thereupon Brooks indorsed his approval on the margin of Plaintiff's Exhibit 1. On July 23, 1925, Harty & Co., complying with its agreement with Slayton (Plaintiff's Exhibit 1) for a premium procured appellant as surety to execute the bond herein sued on, conditioned to indemnify and save harmless from loss resulting from the breach by Harty & Co. of any of the terms, covenants, and conditions of appellee's contract with Harty & Co. Thereafter Harty & Co. began the drainage work and proceeded therewith until August 8, 1926, when, being financially unable to carry on, it abandoned the contract. Appellee promptly and properly notified appellant. Appellant disregarded the notice and declined its privilege of assuming and completing the contract. Appellee did complete it and brought this action. The jury returned a verdict for $37,753.06.

Appellant complains that the court declined to allow it during the trial to file a second supplement to the amended answer. The allowance of such amendment is in the discretion of the court and not subject to review except for abuse. This application for leave to amend was properly denied. It attacked the validity of the contract between the Iona district and appellee (Plaintiff's Exhibit 2) upon the theory that this contract was executed in violation of Florida statutes. This presented no material issue. Assuming without deciding that appellee's contract with the Iona district was not executed in strict compliance with Florida law, the fact remains that appellee's cause of action was not founded thereon. He based *his* case upon his contract with Harty & Co. (Plaintiff's Exhibit 1) and upon appellant's bond (Plaintiff's Exhibit 5) for its performance. This contract and bond rested upon independent considerations, to wit, in the one instance, the price to be paid Harty & Co. for the work; and in the other, the $2,008.12 received by appellant as premium for the bond. Although they were derived from and were somewhat subordinate to appellee's contract with the drainage district, they were not bottomed thereon. Appellee's contract with the drainage district was not any part of the foundation of his action. It is true that certain terms and provisions thereof, including the plans and specifications, were incorporated by reference into appellee's contract with Harty & Co., and likewise into the bond, but this was only for the purpose of indicating the details of the work to be performed. Guerini Stone Co. v. P. J. Carlin Const. Co., 240 U. S. 264, 277, 36 S. Ct. 300, 60 L. Ed. 636; see Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468; Dent v. Ferguson, 132 U. S. 50, 67, 10 S. Ct. 13, 33 L. Ed. 242; Gallagher v. Cornelius, 23 Mont. 27, 30, 57 P. 447; Dinkelspeel v. O'Day, 47 Utah, 18, 23, 151 P. 344; State v. Capital Bank, 32 N. M. 369, 378, 257 P. 993, 53 A. L. R. 1356; Buck v. Albee, 26 Vt. 189, 62 Am. Dec. 564. In Page on Contracts, Supp. Vol. 1, § 1103, it is said:

"If the illegal transaction is in no way necessary to establish plaintiff's right to recover it cannot be invoked to defeat such right."

■ The text cites the case of Thomas v. Little, 209 Ala. 590, 96 So. 896, and Burns v. Stevens, 236 Mich. 447, 210 N. W. 483. The further objection that the contract between appellee and the district was incompetent as evidence because of any supposed invalidity thereof is without merit.

■■ Appellant challenges the denial of a directed verdict. It predicated the motion therefor upon its construction of the phrase "any default upon the part of the principal in the performance of any of the terms, covenants or conditions of said contract" found in paragraph first of the bond sued on.[1] The theory is that if during the progress of the work there should be any departure by the principal in the bond from the terms and conditions of his contract, then as a condition precedent to liability the appellee, as obligee, was required to give written notice. Appellant insists that there was such departure in the following particulars: (1) Default in date of commencement of work; (2) failure to maintain monthly average; (3) failure to prosecute work diligently; and (4) failure to put in proper equipment. The burden was upon appellant, and whether default existed in either of such particulars was at least doubtful. What particular activities of Harty & Co. constituted "commencement of work" was open to serious question. The monthly averages were required to be maintained only "as far as possible," and whether there was a failure to prosecute the work diligently or to put in proper equipment was a matter of judgment. Reasonable men might fairly entertain different views. All these questions were primarily to be determined by Slayton, the obligee. His failure to give written notice to appellant as a prerequisite to liability implies that from his viewpoint there were no such defaults, and we cannot clearly conclude that he should

[1] "First—That no liability shall attach to the Surety hereunder unless, in the event of any default on the part of the Principal in the performance of any of the terms, covenants or conditions of the said contract, the Obligee shall promptly upon knowledge thereof, and in any event not later than thirty days after the occurrence of such default, deliver to the Surety at its office in the City of Des Moines, Iowa, written notice thereof with a statement of the principal facts showing such default and the date thereof; nor unless the said Obligee shall deliver written notice to the Surety at its office aforesaid, and the consent of the Surety thereof obtained, before making to the Principal the final payment provided for under the contract herein referred to."

have taken the opposite view. Equitable Sur. Co. v. Board of Com'rs, 256 F. 773, 776 (C. C. A. 5); Community Bldg. Co. v. Md. Cas. Co., 8 F.(2d) 678, 680 (C. C. A. 9); see also Md. Cas. Co. v. Fowler (C. C. A. 4) 31 F.(2d) 881, 884, 63 A. L. R. 1375. Appellant was a compensated surety, its agent wrote the bond at the instance of Harty & Co., and it must be strongly construed against appellant and in favor of indemnity. Md. Cas. Co. v. Fowler, supra. The bond was for the completion of work according to the plans and specifications of the contract, etc. It was to save appellee harmless from loss "resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said principal, Harty & Co., to be performed." In Nat. Sur. Co. v. Long, 125 F. 887 (C. C. A. 8), and U. S. Fid. & Guar. Co. v. Rice, 148 F. 206 (C. C. A. 8), both of which cases are relied upon by appellant, there was a failure to give notice, not of a prior default, but of the very default sued on. Here notice of the default for which suit was brought was properly given.

■ The contract between appellee and the drainage district provided that 10 per cent. of the monthly estimate of the value of the work performed should be retained until the contract was completed. This contract having been made a part of appellee's contract with Harty & Co., and appellee having failed to retain such percentage of the estimates, it is insisted that appellant was entitled to a directed verdict discharging it under the authority of O'Neill v. Title Guar. & Tr. Co., 191 F. 570, 573 (C. C. A. 6). The answer is that the contract between appellee and Harty & Co. (Plaintiff's Exhibit 1) and to secure the performance of which appellant bound itself, contains no provision for any deduction of percentages from monthly estimates or any other deduction except certain specific advances which appellee had agreed to make. We think that in such situation the subcontract or appellee's contract with Harty & Co. must control, and that therefore appellant's rights as surety were not prejudiced. See Expanded Metal Fire Proofing Co. v. Noel Const. Co., 87 Ohio St. 428, 101 N. E. 348.

■ The bond sued on was not signed by Harty & Co. until October, 1926. This was after default and before suit. Appellant insists, therefore, that it as surety is not bound, and that the bond itself is not competent evidence. These contentions lack merit because, (1) the bond upon its face binds the parties

both jointly and severally; (2) because Harty & Co. were already bound to appellee by the contract to secure the performance of which the bond was given and this protected the surety in its right of subrogation; and (3) because at the time the bond was delivered to appellee, to wit, July 28, 1925, it was accompanied by a letter signed by Lewis, the superintendent of Harty & Co., in which he stated, "enclosed please find Harty & Co. bond to you in the sum of $75,000.00 on the Iona Drainage District." U. S. Fid. & Guar. Co. v. Haggart, 163 F. 801, 809 (C. C. A. 8); Cambria Coal Co. v. Nat. Sur. Co., 141 Tenn. 270, 276, 209 S. W. 641; First Nat. Bank, etc., v. Sleeper, 12 F.(2d) 228, 230 (C. C. A. 8).

Complaint is made that the court rejected testimony consisting of: (1) Certain Florida statutes; (2) certain minutes of the board of supervisors of the Iona drainage district; (3) certain excerpts from the depositions of Gillingham and Lewis; and (4) certain evidence of Brooks. This was not error. The admitted purpose of all this evidence was to prove or attempt to prove the illegality of the collateral contract between appellee and the drainage district, and therefore the resultant illegality of the contract between appellee and his subcontractor. This evidence was not revelant to any issue. As above indicated it was not material to determine the legality of the drainage district contract because plaintiff's cause of action in no wise depended upon a determination of that question.

Other matters are discussed in the brief, but are not assigned as error, and we do not find sufficient merit therein to justify extended consideration.

The judgment of the lower court is affirmed.