## UNION INDEMNITY CO. v. BLUMENFELD ICE & COAL CO.

No. 6167.

Circuit Court of Appeals, Sixth Circuit.

May 12, 1933.

Lowell W. Taylor, of Memphis, Tenn., for appellant.

Julian C. Wilson, of Memphis, Tenn. (Royden Dixon, Walter P. Armstrong, and Wilson, Kyser, Armstrong & Allen, all of Memphis, Tenn., on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Suit upon a bond in the penalty of $10,-000 executed by J. Walter Jones as principal and by appellant as surety, guaranteeing the performance of a contract between Jones and appellee by which Jones was obligated to furnish the materials for, and to erect, a cold storage building on the land of appellee. The contract price was $20,500.

At the close of the evidence both parties moved for a directed verdict. Appellant's motion was denied; that of appellee sustained, and judgment entered for the full penalty of the bond.

The controversy is within very narrow limits. The contractor failed to pay for certain materials and labor required for the construction of, the building. As a result mechanics' and materialmen's liens were established against the property in the sum of $8,-572.14 which appellee was compelled to discharge. The contractor finally abandoned the work and appellee was forced to expend an additional sum of $4,001.87 for its completion. Appellee's suit sought recovery of these specific sums less a balance of $3,695.53 which it had not paid to the contractor. Appellant concedes the execution of the contract, the bond, the default of the contractor, and the loss to appellee of the amount sued for, and contends only that appellee failed to keep and perform certain conditions of the contract which the bond required as precedent to its right to recover thereunder.

■ Article 2 of the contract is: "The contractor agrees that the work under this contract shall be *substantially* completed *on or about* the first day of January, 1923"; but on.that date the building lacked about twenty per cent. of completion and appellee's president, Blumenfeld, knew that fact. Appellant insists that the failure of the contractor to complete the building by January 1, 1923, was a breach of the contract. A condition of the bond, which by its terms was a condition precedent, was that "the Surety shall be notified in writing of any act on the part of said Principal * * * *which may involve a loss for which the said Surety is responsible hereunder immediately* after the occurrence of such act shall have come to the knowledge of said Owner." (All italics ours.) Appellant insists that appellee's failure to give notice of noncompletion of the building by January 1 entitled it to a directed verdict.

We cannot agree with this contention. The contract contains no absolute provision that a failure to complete the building by January 1 should constitute a breach. Article 2 was for appellee's benefit and whether there was a breach for failure to complete was a question primarily to be determined by its proper officers as a matter of judgment after taking into consideration, of course, the word "substantially" and the phrase "on or about," found in this article. Appellee did not declare a breach, but permitted the con-

tractor to proceed with the work, probably under an extension of time authorized by article 35 of the general conditions of the contract when granted by the architect. Any omission of appellee to give notice of default in the completion of the building by January 1, 1923, was an implied recognition that from appellee's viewpoint none had occurred. See Southern Surety Co. v. Slayton, 41 F.(2d) 693, 695 (C. C. A. 6), and cases cited therein.

In addition, appellee has not sought indemnity for loss on account of such breach, and the contract itself does not provide any penalty for such loss. It would seem clear therefore that a failure to give appellant notice of a loss not claimed and for which it is not responsible should not absolve it from liability for losses covered by the bond. Southern Surety Co. v. Slayton, supra.

■ Article 3 of the contract provides: "On or about the first and 15th day of each month ninety per cent of. the value, proportionate to the amount of the Contract, of labor and materials incorporated in the work and on ground shall be paid by the Owner to the Contractor up to the first and 15th day of that month as estimated by the Architect, less the aggregate of previous payments. On *substantial completion of the entire work*, a sum sufficient to increase the total payments to ninety per cent of the contract price, and within ten days thereafter, provided the work be fully completed and the Contract fully performed, the balance due under. the Contract."

Appellee did not pay the architect's estimates on the 1st and 15th of each month. Appellant urges therefore that the failure to do so upon those dates was a violation of the following condition precedent of the bond, to wit: "The Owner shall keep, do and perform each and every, all and singular, the matters and things set forth and specified in said contract, to be by the Owner kept, done and performed and exclusively at the times and in the manner as in said contract specified, * * * *" and that appellant was therefore entitled to a directed verdict on this account.

We think this contention is unsound. The contract did not require appellee to pay the estimates exactly on the 1st and 15th days of each month, but only that they should be paid on or about those dates. Further, appellee was not required to make payments upon any estimates, except such as were properly certified by the architect to be due on the 1st and 15th days of each month. It was provided by article 26 of the General Conditions:

That the contractor should submit an application for his estimates to the architect at least ten days before a payment was due and if required should submit receipts and other vouchers showing his disbursements for materials and labor and a schedule of values of the various parts of the work performed including quantities; that this schedule was to be used as a basis for the architect's certificate unless it was found to be in error; and that the certificate of the architect was to be issued not later than the day when the payment fell due. This method was disregarded both by the contractor and the architect. The architect probably failed to observe it because no application for estimates was ever made to him by the contractor in the manner required by article 26. The method actually adopted was substantially as follows: The contractor and the architect would meet in informal conference on any convenient date following which the architect would submit to appellee an estimate of the amount due the contractor less retained percentage up to that particular date. These estimates were: For November 23, 1922, $4,304.48; for December 7, 1922, $3,168.63; for December 20, 1922, $3,608.63; and for January 10, 1923, $1,827.55. The first was paid promptly; $3,000 was paid upon the second on December 8 and an additional $3,000 on December 13. Appellee also made the following payments after the third and before the fourth estimate, to wit: $2,500 on December 21; $1,000 on December 28; and $1,500 on January 5. After the last estimate appellee paid $1,000 on January 12, and $500 on January 19, leaving a balance then due, and unpaid of $1,104.81. Blumenfeld adopted this method of making payments at intervals because he desired to make sure before doing so that the labor specified in the estimates had been performed and that the material had been placed on the ground. This mode of payment would have been unnecessary had the contractor and architect submitted the estimates in accordance with article 26 of the general conditions. There is evidence tending to show that this arrangement was satisfactory to the contractor.

We do not find anything in this method which is equivalent to a failure to pay estimates which were neither made up nor submitted to appellee in the manner contemplated by the contract.

At the hearing of this case here the Independent Indemnity Company, surety upon appellant's supersedeas bond, filed its petition setting up that appellant, a corporation, had been dissolved by an order entered January 6, 1933, in the civil district court for the parish of Orleans, La., and praying that its appeal be abated and that appellee be remitted to the Louisiana court. The order of the Louisiana court indicates that receivers have been appointed for appellant, but neither these receivers nor any representative of appellant joined in the petition, and we do not think that the indemnity company is in a position to ask the relief sought.

Appellee would probably have long since realized upon the judgment herein had its collection not been stayed by the execution of the supersedeas bond. The surety upon the bond cannot now be permitted to avoid its obligation in the manner and by the procedure indicated.

The petition is denied, and the judgment is affirmed.